# Illinois Official Reports

## Supreme Court

***Grimm v. Calica*, 2017 IL 120105**

| | |
|---|---|
| Caption in Supreme Court: | CHRISTINE GRIMM, Appellee, v. RICHARD H. CALICA, as Director of Children and Family Services, Appellant. |
| Docket No. | 120105 |
| Filed | February 17, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Christopher C. Starck and the Hon. Thomas M. Schippers, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Ann C. Maskaleris, Assistant Attorney General, of Chicago, of counsel), for appellant. |
| | Eric F. Rinehart, of Malia & Rinehart, P.C., of Waukegan, for appellee. |

Justices            JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Freeman, Kilbride, Garman, and Burke concurred in the judgment and opinion.

Justice Thomas dissented, with opinion, joined by Chief Justice Karmeier.

**OPINION**

¶ 1      The central issue in this case is one of jurisdiction—specifically, so-called special statutory jurisdiction under the Administrative Review Law. See 735 ILCS 5/3-101 *et seq.* (West 2012). Section 3-103 of that statute states that a complaint for judicial review of an administrative agency decision must be filed "within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2012). Here, plaintiff Christine Grimm filed such a complaint in Lake County circuit court 36 days after the date of a decision against her by the Department of Children and Family Services (Department). Grimm conceded that her complaint was untimely but insisted that the jurisdictional bar of section 3-103 could be lifted because the Department's decision was misleading and, consequently, violated due process. The trial and appellate courts agreed. See 2015 IL App (2d) 140820.

¶ 2      For the reasons that follow, we affirm.

¶ 3                                BACKGROUND

¶ 4      In 2012, the Department investigated and indicated a finding of child abuse against Grimm after her husband told the McHenry County sheriff's office that she had struck their six-year-old son twice with a wooden spoon over his clothes for refusing to eat peaches for breakfast. The husband spoke to deputy sheriffs a day after the incident, which was also a day after Grimm moved out of the marital residence. According to the deputy sheriffs who examined the child, there was a welt and a bruise on the child's left buttock. Grimm, a teacher, claimed that the report was inaccurate and requested its expunction from the State Central Register. In 2013, an administrative law judge conducted a hearing and issued a written opinion, recommending that Grimm's request should be denied.

¶ 5      Nine days later, the Department issued its decision in a letter signed by its director, Richard Calica. The letter, dated July 30, 2013, was addressed to the attorney who had represented Grimm at the hearing and indicated that it was sent via certified mail. In the letter, Calica stated that the administrative law judge determined that the indicated finding was supported by a preponderance of the evidence. Calica adopted the administrative law judge's findings of fact and conclusions of law and concurred in the administrative law judge's recommendation that Grimm's request should be denied. Calica concluded:

> "This represents the final administrative decision of the [Department]. If you disagree with any part of it, you may seek judicial review under the provisions of the Administrative Review Law, 735 ILCS 5/3-101 *et seq.* (West 2010), within 35 days of the date this decision was served on you."

The administrative law judge's opinion was enclosed with the letter.

¶ 6    On September 4, 2013, 36 days after the date of the letter, Grimm filed her complaint for judicial review of the Department's decision. Grimm alleged that the Department "issued a final and appealable order" on July 23[1] but stated that the Department's decision "was issued" to her on July 30. She further alleged that the complaint was filed within 35 days of the decision being served on her. On the merits, Grimm claimed that the administrative law judge's conclusions of law were erroneous and against the manifest weight of the evidence, so the Department's decision should be reversed.

¶ 7    The Department filed a motion to dismiss for lack of jurisdiction under section 2-619(a)(5) of the Civil Practice Law (735 ILCS 5/2-619(a)(5) (West 2012)) because Grimm's complaint was untimely.[2] The Department stated that it served Grimm with its final decision on July 30, when it mailed the letter to her attorney via certified mail. As proof of the date that the letter was mailed, the Department provided an affidavit from one of its staff members, stating that she had mailed the letter to Grimm's attorney on July 30, as well as a certified mail receipt with a July 30 postmark.

¶ 8    Grimm responded that, while the Department mailed its decision on July 30, 2013, her attorney received it no earlier than July 31, 2013.[3] Grimm added that she did not receive the decision until August 12 or 13, 2013. She argued that mailing the decision to her attorney was inadequate because section 3-103 requires service on the affected party. She further argued that, under *Coleman v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 392 Ill. App. 3d 380, 386 (2009), her complaint was not untimely because the Department did not fairly and adequately inform her of its decision and, thus, violated due process. Specifically, Grimm insisted that the phrase "within 35 days of the date this decision was served on you" was confusing and that the Department should have said simply that the complaint was due within 35 days of the date of the letter. According to Grimm, basic fairness required the trial court to exercise jurisdiction, noting that the attorney who received the decision and relayed it to her was her original attorney and that she hired another attorney "after the Labor Day weekend."[4]

¶ 9    The Department replied that the Administrative Procedure Act required notice of its decisions to affected parties or their agents. See 5 ILCS 100/10-50(a) (West 2012). The Department disputed Grimm's contention that its decision was unclear about the service date.

¶ 10    The trial court denied the Department's motion to dismiss. The court observed that because of Labor Day, Grimm's complaint "was filed 24 hours after the time in which the statute

---

[1]It is unclear why Grimm referred to that date. Our review of the record has not shown any relevant event on July 23, 2013. The administrative law judge's opinion was dated July 21, and the Department's decision was dated July 30.

[2]Shortly after the motion to dismiss was filed, Calica resigned his position, but the caption in this case continued to refer to him. In the opening brief of this appeal, the Attorney General states that Calica has been replaced by George Sheldon, who "should now replace Calica in the case's caption." To avoid any confusion over names, we will attribute the Attorney General's arguments to the Department.

[3]In her response, Grimm seemed to believe that the administrative law judge's opinion was the Department's "ruling" and that the Department's decision was merely a "cover letter."

[4]In 2013, Labor Day was September 2.

provides for [its] filing." According to the trial court, "the interests of justice" required that Grimm should be allowed to obtain review of the Department's decision: "While to many citizens a finding by the Department is an embarrassment, to this citizen such a finding greatly impacts her ability to be gainfully employed as a teacher." After Grimm filed the administrative record and the parties filed briefs, the trial court ruled that the Department's decision was "clearly erroneous" and reversed it. The Department appealed.

¶ 11    The appellate court affirmed, holding that Calica's letter was not "well calculated to apprise" Grimm that the 35-day period began on July 30, 2013, when the letter was mailed. 2015 IL App (2d) 140820, ¶ 14. The appellate court stated that "nothing within what the Department sent showed a date of mailing." *Id.* ¶ 18. Although Calica's letter contained a date, that date "*appears as* nothing more than the date of the letter," not the date of its mailing. (Emphasis in original.) *Id.* ¶ 19. The appellate court added that, even if the date of the letter "could be taken as a mailing date, nothing in the letter indicated that it was also the service date." *Id.* The appellate court continued:

> "[W]e find the idea of a service date that is known only to the one doing the serving to be troublingly counterintuitive. The serving of a document is a formal act of giving notice. A provision that deems the mailing date of a notice to be the service date thus means that the notice-giver starts out with a burden of confusion to overcome: that of conveying that the law deems notice to have been given before it is actually received. The notice-giver can overcome that by, for instance, explicitly stating the deemed service date. The Department's notice format does far less, in that it does not even clearly show the mailing date. A potential administrative-review plaintiff thus faces not only the ordinary challenge of knowing the law regarding service but also the second challenge of learning the mailing date." *Id.* ¶ 20.

¶ 12    The appellate court referred to Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015), which gives an appellant 30 days to file a notice of appeal but also an additional 30 days if there is a "reasonable excuse." 2015 IL App (2d) 140820, ¶ 22. The Administrative Review Law does not have such a "backstop," so any confusion created by an agency's notice becomes "a stumbling block in a setting in which a potential administrative-review plaintiff can afford few missteps." *Id.* The appellate court noted that the Department here could have removed any confusion by informing Grimm that the mailing date, as well as the service date, was the date of the letter. *Id.* Calica's letter, however, "was not in a format that would be chosen by someone genuinely trying to convey the time limit for filing an administrative-review complaint." *Id.* Because the letter did not afford Grimm due process, the trial court did not err in declining to hold plaintiff to the 35-day deadline for a complaint under the law. *Id.* ¶ 23. The trial court was permitted to reach the merits, and the Department never challenged the court's ruling in that regard. *Id.*

¶ 13    This court allowed the Department's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015).

¶ 14                                ANALYSIS

¶ 15    This appeal comes before us after the appellate court affirmed the trial court's decision to deny the Department's motion to dismiss Grimm's complaint for judicial review for lack of jurisdiction. The Illinois Constitution provides that final circuit court judgments are appealable

as a matter of right (Ill. Const. 1970, art. VI, § 6) but final administrative agency decisions are appealable only "as provided by law" (Ill. Const. 1970, art. VI, § 9). In reviewing an administrative agency's decision, a court exercises special statutory jurisdiction, which is limited by the language of the statute conferring it. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 45. A party seeking judicial review of such a decision must comply strictly with the requirements of the Administrative Review Law. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 178 (2007); see also *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 349-50 (2006) ("The Administrative Review Law was an innovation and a departure from the common law, and the procedures established therein must be followed."). Failure to do so robs the court of jurisdiction. *Rodriguez*, 218 Ill. 2d at 350.

¶ 16    Section 3-102 of the Administrative Review Law provides that a party to a proceeding before an administrative agency cannot obtain judicial review of an adverse agency decision except "within the time and in the manner" set forth elsewhere in the statute. 735 ILCS 5/3-102 (West 2012). Section 3-103 provides the time, stating that an action for judicial review must be commenced by filing a complaint and issuing summons "within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2012); *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 211 (1985) ("judicial review of the administrative decision is barred if the complaint is not filed within the time specified"). Section 3-103 further provides that "a decision shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected by the decision at his or her last known residence or place of business." 735 ILCS 5/3-103 (West 2012); see also *Nudell v. Forest Preserve District*, 207 Ill. 2d 409, 424 (2003) (stating that section 3-103 means "when deposited," not "when received"); *Cox v. Board of Fire & Police Commissioners*, 96 Ill. 2d 399, 403 (1983) ("the decision was served when deposited in the United States mail"); *West-Howard v. Department of Children & Family Services*, 2013 IL App (4th) 120782, ¶ 17; *Board of Education of St. Charles Community Unit School District No. 303 v. Adelman*, 137 Ill. App. 3d 965, 969 (1985).

¶ 17    Section 10-50(a) of the Illinois Administrative Procedure Act requires agencies to notify parties or their agents "personally or by registered or certified mail of any decision or order." 5 ILCS 100/10-50(a) (West 2012); see also 89 Ill. Adm. Code 337.220 (2002); 89 Ill. Adm. Code 337.230 (1995) (stating that the Department's director must send final administrative decisions to either the person who challenged an earlier finding or that person's representative). Thus, mailing a decision to a party's attorney starts the jurisdictional clock.

¶ 18    Here, the 35-day period began when the Department mailed Calica's letter to Grimm's original attorney and expired on September 3, 2013, a day before Grimm filed her complaint. The trial court excused Grimm's tardiness "in the interests of justice," but that rationale was unavailable because "equitable tolling is inconsistent with the text of the [Administrative] Review Law." *Van Milligen v. Department of Employment Security*, 373 Ill. App. 3d 532, 543 (2007). The appellate court took a more principled approach, concluding that Calica's letter was misleading because it failed to indicate that its service date was its mailing date and violated due process. The only issue before us is whether Grimm received the process that she

was due under the constitution. On that issue, our review is *de novo*. See *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 31.

¶ 19    The Department's argument before us is twofold. First, the Department contends that due process does not require judicial review of administrative agency decisions and also does not require agencies to inform parties affected by those decisions that they are subject to judicial review by statute or that such review is subject to a 35-day time limit. Thus, according to the Department, due process does not require an agency to inform a party when its decision was mailed and served—actions that begin the 35-day period under section 3-103. Second, the Department contends that even if due process requires some information from an agency, Calica's letter conveyed that information. The Department asserts that the letter was not misleading, but rather clear on its face, about its mailing date.

¶ 20    Grimm responds by essentially tracking the appellate court's reasoning. According to Grimm, Calica's letter was misleading and, therefore, constitutionally inadequate because it did not identify "a critical fact" known only to the Department—the mailing date, or what she terms "the date of deposit"—that would have made the notice meaningful. She posits that the Department could have included a certificate of service or an affidavit of mailing with Calica's letter. Without such a document or something in the letter itself to indicate that the letter's date was also its actual mailing date, she contends that she had no way of knowing when the 35-day period began to run.

¶ 21    Procedural due process protects against mistaken or unjustified deprivations of life, liberty, or property. *Heelan*, 2015 IL 118170, ¶ 31. Due process is a flexible concept, whose requirements depend on the government action at issue and the private interest implicated by that action. See *People v. Lindsey*, 199 Ill. 2d 460, 472 (2002) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Department correctly asserts that due process does not require judicial review of administrative agency decisions, nor does it require agencies to inform parties affected by those decisions that they are subject to judicial review only within 35 days. See *Carver v. Nall*, 186 Ill. 2d 554, 563 (1999), *overruled on other grounds by Nudell*, 207 Ill. 2d at 423; *Carroll v. Department of Employment Security*, 389 Ill. App. 3d 404, 411 (2009). However, due process does require that agency decisions themselves provide clear notice to affected parties. See *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 420 (1997) ("[n]otice is a fundamental requirement of due process"). Consequently, as the appellate court here observed, expiration of the 35-day period under section 3-103 will not bar a plaintiff's complaint for administrative review "where the agency fails to fairly and adequately inform a plaintiff of its decision." *Bell v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 758, 763 (2010); *Coleman*, 392 Ill. App. 3d at 386; *Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 357 Ill. App. 3d 749, 761-62 (2005).

¶ 22    In *Coleman*, *Bell*, and *Barry*, the widows of Chicago firefighters sought death-benefit annuities after their husbands died. The Chicago firefighter's retirement board sent letters to the widows, stating that their annuity applications were granted. The board did not inform them that the benefits were nonduty death benefits under section 6-141.1 of the Pension Code, rather than duty death benefits under section 6-140. In each case, the appellate court held that the board's letters were misleading because they obscured the adverse nature of the decisions and that the consequent due process violations tolled the 35-day period under section 3-103.

*Bell*, 398 Ill. App. 3d at 765-66; *Coleman*, 392 Ill. App. 3d at 386; *Barry*, 357 Ill. App. 3d at 763.

¶ 23 Those cases are inapposite to the extent that the Department fairly and adequately informed Grimm of its decision. Unlike the letters in *Coleman*, *Bell*, and *Barry*, Calica's letter was clear on the merits. Calica stated that he concurred with the administrative law judge's recommendation that Grimm's request for an expunction of the indicated finding should be denied. Nevertheless, the appellate court extrapolated from the holdings in those cases to conclude that the letter was still confusing as to its mailing date. We agree.

¶ 24 Certainly, an administrative agency like the Department has no constitutional duty to inform a party affected by one of its decisions of the statutory right to judicial review or the jurisdictional window in which to exercise that right. See *Carver*, 186 Ill. 2d at 563; *Carroll*, 389 Ill. App. 3d at 411. When an agency chooses to do so, however, its information must not be misleading. Whether Calica's letter, and specifically its last paragraph, was fair and adequate on due process grounds implicates *Mathews v. Eldridge*, 424 U.S. 319 (1976), and its now-traditional balancing test for determining whether a person has received due process. In *Mathews*, the Supreme Court instructed:

> "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

¶ 25 Here, the private interest affected by the Department's final decision to deny Grimm's request for an expunction is her interest in present or future employment as an Illinois public school teacher. See *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 273-74 (2004) (holding that "an indicated report" against a teacher "implicates a protected due process interest"). The Department concedes that Grimm likely had a constitutionally protected liberty or property interest impacted by the indicated finding.

¶ 26 Additionally, there was a risk of erroneous deprivation of that interest through the procedures used—namely, the last paragraph of Calica's letter. That paragraph informed Grimm that she could seek judicial review of the decision pursuant to the Administrative Review Law within 35 days of the date of service, but it did not mention that the service date is the mailing date under section 3-103. As the appellate court aptly noted, a statutory provision that deems notice given before it is received is, at best, counterintuitive and probably confusing to an affected party. 2015 IL App (2d) 140820, ¶ 20. To compound that confusion, the letter cited the statute as a whole, not section 3-103, which might have alerted Grimm that the service date is considered the mailing date. To ignore the misleading nature of the last paragraph of the letter would be to ignore the fact that the risk of an erroneous deprivation of her protected due process interest ripened into a "clearly erroneous" decision after a hearing before the trial court. Notably, the Department has never challenged that court's decision, reversing the Department's decision. On the merits, Grimm won.

¶ 27 Finally, the value of telling Grimm that the date on the letter was both the mailing date and the service date is obvious, and the burden on the Department in changing the wording of a

letter is insignificant. The Department already follows such a practice with respect to other notifications. The Department's regulations provide that review of an initial finding must be made "within 60 days after notification of the completion of the investigation by the Child Protective Services Unit, as determined by the date of the notification sent by the Department." See 89 Ill. Adm. Code 336.40(c) (2000). If the Department clearly informs affected parties of the date that the 60-day period for review of an initial finding begins, it also could clearly, and easily, inform affected parties of the date that the 35-day period for judicial review of a final decision begins. In that regard, the Department could have followed the template provided in *Carroll*, 389 Ill. App. 3d at 406, where the agency's decision told the affected party that he must "file a complaint for administrative review *** within 35 days from the above mailing date."

¶ 28        Balancing Grimm's constitutionally protected interest, the risk of an erroneous deprivation of that interest, and the value of substitute procedures against the burden on the Department to change boilerplate language in a letter announcing its final decision, we conclude that Grimm did not receive the process to which she was due. Accordingly, Grimm's failure to file her complaint for judicial review within the 35-day period under section 3-103 did not deprive the trial court of jurisdiction.

¶ 29                                              CONCLUSION
¶ 30        For the reasons that we have stated, the judgment of the appellate court is affirmed.

¶ 31        Affirmed.

¶ 32        JUSTICE THOMAS, dissenting:
¶ 33        This is a simple case that has yet to receive a simple resolution. Plaintiff filed her complaint for administrative review one day after the jurisdictional deadline had expired. Accordingly, the circuit court was without jurisdiction and should have dismissed the complaint. The trial court did not do so, finding that, because plaintiff filed the complaint a mere 24 hours after the deadline had expired, the interests of justice allowed the court to hear the complaint. The appellate court wisely did not endorse the circuit court's "interests of justice" rationale.[5] Rather than reversing the circuit court in a summary order, however, the appellate court reached the same result under the due process clause of the United States Constitution. U.S. Const., amend. XIV. Without discussing the relevant case law from this court, the appellate court held that the Department violated plaintiff's constitutional rights by sending her a notice of its final decision that was not clear as to its mailing date and that did not explain that the date of service is the date of mailing. Today, a majority of this court has adopted the appellate court's reasoning. Unlike the appellate court, the majority acknowledges that, under our controlling case law, due process does not require judicial review of administrative decisions, nor does it require notice of the right of judicial review. The majority nevertheless affirms the appellate court, holding that the notice was so confusing that it violated the due process clause because it did not explain that the date of service is the date of mailing. The majority holds this

_____

[5]See *Carroll v. Department of Employment Security*, 389 Ill. App. 3d 404, 410 (2009) (explaining that "equitable defenses do not apply to jurisdictional determinations").

despite that fact that the notice (1) tracked the statutory language precisely, (2) did not contain any incorrect information, and (3) was served on plaintiff's attorney. In other words, the majority holds today that a notice that is not required by the due process clause, is served on an attorney in a proceeding not required by the due process clause, and contains a correct statement of the law, violates the due process clause. Because I do not believe that the Department violated plaintiff's constitutional rights when it served her attorney with a boilerplate notice that correctly stated the law, I dissent.

¶ 34                               The Majority's Holding

¶ 35    The majority's holding is narrower than the appellate court's. The appellate court identified several ways in which the Department's final order violated plaintiff's due process rights. First, the order appeared in the form of a business letter, so plaintiff would have believed that the date on the order—July 30, 2013—was the date of the letter rather than the date of mailing. 2015 IL App (2d) 140820, ¶ 19. Second, even if the date of the letter could be taken as the mailing date, nothing indicated that it was also the service date. *Id.* The court said that it found the idea of a service date that it is known only to the one doing the serving "troublingly counterintuitive." *Id.* ¶ 20. The appellate court next explained that a notice giver has "a burden of confusion to overcome" in that it must clearly explain that the law deems notice given before it is actually received. *Id.* The court held that the Department could have overcome the problem by "explicitly stating the deemed service date." *Id.* According to the appellate court, the notice given here did far less than that, in that it did not even clearly show the mailing date. *Id.* Thus, the Department had left plaintiff with the "ordinary challenge of knowing the law regarding service but also the second challenge of learning the mailing date." *Id.* Because the Department could have alleviated any confusion by stating that the mailing date was the service date and because the notice "was not in a format that would be chosen by someone genuinely trying to convey the time limit for filing an administrative-review complaint," the plaintiff was not afforded due process. *Id.* ¶ 22.

¶ 36    By contrast, the only due process violation the majority identifies is that the notice did not explain that the service date is the mailing date. According to the majority, the rule that the service date is the mailing date is "probably confusing." *Supra* ¶ 26. The majority acknowledges that the notice cited the Administrative Review Law (Review Law) (735 ILCS 5/3-101 *et seq.* (West 2014)) but not to the specific section that contains the service rule. *Supra* ¶ 26. Applying the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), the majority concludes that the Department violated plaintiff's constitutional rights because it provided her with "misleading" information and that it could have easily remedied the problem by changing the wording of its notice. *Supra* ¶¶ 24-28.

¶ 37                    The Relevant Authority Mandates a Reversal

¶ 38    The settled legal principles that apply to this case show that the majority's holding is not only wrong but impossible. An indicated finding that a teacher committed child abuse creates a "substantial risk" that the teacher will be "barred from pursuing his or her chosen occupation" and thus implicates due process concerns at the administrative level. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 273-74 (2004). Due process is a flexible concept, and what satisfies the right depends upon the circumstances. *Mathews*, 424 U.S. at 334.

Generally, procedural due process entails an orderly proceeding where an individual is served with notice and has an opportunity to be heard. *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 155-56 (2002). The right to an appeal from an administrative decision, however, is *not* essential to due process of law. *Carver v. Nall*, 186 Ill. 2d 554, 563 (1999). Because judicial review of administrative decisions is not required by the due process clause, it necessarily follows that an administrative agency is not required to notify a party of the statutory right to judicial review or of the 35-day time limit for exercising that right. *Id.* at 562-63. Nor does the due process clause require the agency to explain how to count the 35 days or to identify the exact date on which the complaint for administrative review is due. See *Carroll*, 389 Ill. App. 3d at 410-11. The due process clause *does* require, however, that the administrative agency give the plaintiff fair and adequate notice of the agency's decision (see *Bell v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 758, 764 (2010)), and the 35-day time limit for filing a complaint for administrative review begins to run only when a party has received that notice (*id.*).

¶ 39    A circuit court has the power to review administrative decisions only as provided by law. Ill. Const. 1970, art. VI, § 9. Thus, a circuit court exercises special statutory jurisdiction when it reviews a decision under the Review Law. *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 181-82 (2006). A party seeking administrative review must strictly comply with the procedures set forth in the Review Law. *Id.* at 182. If a party does not seek review within the time and manner set forth in the Review Law, the parties are barred from obtaining judicial review. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 210-11 (1985). An action for administrative review is commenced by filing a complaint "within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2014). This 35-day time limit is jurisdictional (*Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 350-51 (2006)), and therefore the circuit court must dismiss a complaint for administrative review that is filed after this time period has expired (*id.* at 356-57). Because the 35-day time limit is a jurisdictional time limit that the courts are obligated to enforce strictly, a court must dismiss a complaint for administrative review that is filed a mere 1 day after the deadline has expired. See *Board of Education of St. Charles Community Unit School District No. 303 v. Adelman*, 137 Ill. App. 3d 965 (1985) (court was without jurisdiction to review administrative review complaint filed 36 days after copy of decision was sent to plaintiff's attorney by certified mail).

¶ 40    The date on an agency decision is presumed to be the mailing date. See *Summers v. Illinois Commerce Comm'n*, 58 Ill. App. 3d 933, 937 (1978). Under section 3-103 of the Review Law (735 ILCS 5/3-103 (West 2014)), the 35-day period for filing a complaint for administrative review begins on the date that the agency decision is mailed, which is also the date of service. *Rodriguez*, 218 Ill. 2d at 351; *Nudell v. Forest Preserve District*, 207 Ill. 2d 409, 414, 423-24 (2003). Under section 10-50(a) of the Administrative Procedure Act, service may be made on a party's agent appointed to receive service of process. 5 ILCS 100/10-50(a) (West 2014). The law is settled that notice to an attorney is notice to his client and the attorney's knowledge is imputed to his client. See *Adelman*, 137 Ill. App. 3d at 970. If the party's agent is not notified personally, then notice must be by registered or certified mail. 5 ILCS 100/10-50(a) (West 2014).

¶ 41        Against this backdrop of legal authority—none of which is disputed by the majority—we may now consider what happened in this case. The Department concedes that, pursuant to this court's decision in *Lyon*, plaintiff—a school teacher—likely had a constitutionally protected liberty or property interest that was implicated when an indicated finding of child abuse was entered against her in the central register. Consistent with the requirements of due process, plaintiff was notified of the indicated finding, sought an administrative appeal, and participated in a hearing before an administrative law judge (ALJ). The ALJ ruled against her, and the Director entered a final administrative decision adopting the ALJ's decision. The decision was absolutely clear as to its merits—the Director adopted the findings of fact and conclusions of law of the ALJ, and the ALJ's recommendation was attached to the Department's final decision. At the top of the decision, following the words "CERTIFIED MAIL," was the date July 30, 2013. Going beyond what the due process clause requires, the decision notified plaintiff of her right to seek judicial review and even provided the time for doing so—"within 35 days of the date this decision was *served on you*." (Emphasis added.) This language tracked the governing statute—section 3-103 of the Review Law—which provides that a complaint for administrative review must be filed "within 35 days from the date that a copy of the decision sought to be reviewed was *served upon the party affected by the decision*." (Emphasis added.) 735 ILCS 5/3-103 (West 2014). Further, the notice provided plaintiff with a citation to the Review Law. See 735 ILCS 5/3-101 *et seq.* (West 2014). None of this information was required by the due process clause.[6] *Carver*, 186 Ill. 2d at 562-63.

¶ 42        The Department notified plaintiff of its decision by serving her attorney by certified mail, return receipt requested. The decision was sent by certified mail on July 30, 2013, and the return receipt is also signed and dated July 30, 2013. Under well-established law, the 35-day time period began to run on July 30, 2013. Plaintiff's attorney obviously knew this, and his knowledge is imputed to his client. Plaintiff filed her complaint for administrative review on the thirty-sixth day, September 4, 2013. Accordingly, the circuit court was without jurisdiction to hear the complaint for administrative review and should have dismissed it. There were no due process concerns, as the Department went above and beyond what the due process clause requires.

¶ 43                        Neither the Appellate Court's Reasoning nor
                                 the Majority's Withstands Scrutiny

¶ 44        Neither the majority nor the appellate court offered any persuasive reasons as to why the law does not apply to plaintiff. As noted above, the majority's holding is narrower than the appellate court's. Unlike the appellate court, the majority does not identify any issues with the form of the decision or the mailing date. The appellate court's concerns in this regard were not well founded. The document sent to plaintiff very clearly stated that it was the final decision, and it stated at the top "CERTIFIED MAIL July 30, 2013." And, even if the appellate court was correct that the date appeared to be the date of the decision rather than the mailing date, that does not help plaintiff because it is settled that the date on an agency decision is presumed to be the mailing date. *Summers*, 58 Ill. App. 3d at 937. This is a rebuttable presumption, but

_____

[6]Section 10-50(b) of the Administrative Procedure Act requires that "All agency orders shall specify whether they are final and subject to the Administrative Review Law." 5 ILCS 100/10-50(b) (West 2014).

plaintiff did not rebut it. In fact, once the Department proved the mailing date by affidavit and the certified mail receipt, plaintiff admitted that the decision was mailed to her counsel on July 30. Moreover, the notice was served upon her attorney, and presumably her attorney knows the service rules.

¶ 45　　　　The majority adopts only that portion of the appellate court's holding that held that the notice was unnecessarily confusing in that it stated that the 35 days begins to run on the date that the decision "was served upon you."[7] The majority agrees with the appellate court that the idea of a document being deemed served when it is mailed is "probably confusing" (*supra* ¶ 26) and, therefore, the due process clause of the United States Constitution is violated if the notice does not explain that the mailing date is the service date (*supra* ¶ 27). The majority acknowledges that due process does not require notice of the right to judicial review but holds that if notice is provided, it must not be misleading. *Supra* ¶ 24. According to the majority, the Department could have remedied this constitutional violation in one of two ways: (1) it could have cited section 3-103 of the Review Law instead of citing the statute as a whole, or (2) it could have explained that the mailing date is the service date. *Supra* ¶¶ 26-27.

¶ 46　　　　There are several problems with this reasoning.[8] First, the notice was not misleading. It precisely tracked the statutory language and provided a correct statement of the law. Second, as to whether the Department could have remedied the alleged constitutional violation by citing to section 3-103 instead of the statute as a whole, I would note that the entire Review Law is a mere 13 sections long and covers five pages in the official statute book. See 735 ILCS 5/3-101 *et seq.* (West 2014). Surely whether or not the due process clause is violated cannot turn on the length of time it takes a person to locate the section titled "Commencement of action." Third, I fail to see how citing to section 3-103 would alleviate the confusion that concerns the majority. Again, the majority finds a due process violation because a person might not understand that a document is considered served when it is mailed. According to the majority, citing section 3-103 would have "alerted Grimm that the service date is considered the mailing date." *Supra* ¶ 26. Would it have? If plaintiff had been given that citation and looked up the section, she would have learned that, just as the notice told her, the 35 days began to run when the document was served upon her. Then she would have seen the following paragraph, the one that supposedly would have alleviated her confusion:

　　　　　"The method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency, but if no method is provided, a decision shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the United States mail, in a

---

[7]At the beginning of its analysis, the majority explains that the appellate court concluded that the notice was "confusing as to its mailing date," and the majority states that it agrees. *Supra* ¶ 23. However, in the paragraphs that follow, the majority says nothing about the notice being confusing as to its mailing date, and the majority finds a due process violation solely on the basis that the notice did not explain the mailbox rule. *Supra* ¶¶ 24-28.

[8]I am assuming for the sake of argument that the majority is correct when it claims that a notice not required by the due process clause violates the due process clause if it is misleading. *Supra* ¶ 24. It should be noted, however, that the majority cites no authority for this proposition. Given that the majority is wrong whether or not that it is the law, resolving that issue is not necessary for purposes of this dissent.

sealed envelope or package, with postage prepaid, addressed to the party affected by the decision at his or her last known residence or place of business." 735 ILCS 5/3-103 (West 2014).

¶ 47   So, at this point, I would assume the following questions would come to plaintiff's mind: (1) What is "the Act governing the procedure before the administrative agency," and what method of service does it provide? (2) What does it mean for a decision to be personally delivered to me? (3) Does "personally delivered" mean when my attorney gave it to me, or does it mean hand delivered by a mail carrier? (4) How can the last clause *ever* apply to me when the letter was not sent to my residence or place of business? Nothing in this paragraph would have indicated to plaintiff that the document was deemed served when sent to her attorney by certified mail. If the majority honestly believes that giving a citation to this section would have cleared up any of plaintiff's alleged confusion about the mailbox rule, then surely it is obligated to explain how.

¶ 48   Fourth, and most importantly, the majority's solution for remedying the perceived due process problem—notifying a party that the mailing date is the service date—is not the only way the Department could remedy the problem. The Department could simply pare the notice back to the minimum statement required by the Administrative Procedure Act: that the decision is final and subject to the Review Law. This would remove any chance that a court could later find a due process problem with the notice. Again, *Carver* held that the due process clause does not require judicial review of administrative decisions, nor does it require notice of the right to judicial review or of the 35-day time limit for seeking judicial review. *Carver*, 186 Ill. 2d at 562-63. The appellate court based its holding on its concern that "[a] potential administrative-review plaintiff *** faces not only the ordinary challenge of knowing the law regarding service but also the second challenge of learning the mailing date." 2015 IL App (2d) 140820, ¶ 20. And the majority bases its decision on the fact that the notice was misleading and confusing because it did not explain the mailbox rule. *Supra* ¶ 27. The problem with both of these positions is that this court has already implicitly held that any such challenges of knowing the law regarding service do *not* violate the due process clause.

¶ 49   If plaintiff would have received the same administrative decision with a notice containing only the statutorily required information, she would have had the burden of learning how to exercise her right of judicial review and the time limits for filing a complaint for administrative review. If she were able to locate section 3-103, she would then face all of the questions that I listed previously. She would then need to consult case law to learn that the date on an agency decision is considered the mailing date. Finally, she would need to learn that the Children and Family Services Act adopts the Administrative Procedure Act and that section 10-50(a) of that statute provides that a party's agent appointed to receive service of process may be notified of the decision by certified mail. 5 ILCS 100/10-50(a) (West 2014). Certainly plaintiff would have been far more confused in this situation and would have faced much more of a challenge of learning the law than she did here. And yet, this court has held that leaving her the burden to learn *all* of this information does *not* violate the due process clause. *Carver*, 186 Ill. 2d at 562-63. But today the majority holds that if the Department gives her only some of this information, the due process clause is violated. This simply cannot be so. The majority's holding is not possible under this court's jurisprudence.

¶ 50        The basis for the majority's holding is that when an agency gives notice, even notice that is not constitutionally required, the "information must not be misleading." *Supra* ¶ 24. But how can a court deem misleading a notice that correctly states the law? We are treading on dangerous ground if we are going to start holding that the constitution is violated when a party's attorney is given correct legal information simply because that information might be misinterpreted by a layperson. Moreover, the majority's holding cannot be correct. If an agency "misleads" a party by not explaining the mailbox rule, then a party who is given only the statutorily required notice is also misled. How can the constitution be violated in one of these situations but not the other? And, as set forth above, a person who was given a citation to section 3-103 would face the same alleged confusion as plaintiff, as section 3-103 in no way clearly conveys that the mailbox rule applies here. The notice given to plaintiff tracked the statutory language and correctly stated the law. There is no basis whatsoever to hold that it is misleading, let alone so misleading that it violated the United States Constitution.

¶ 51                              No Authority Supports an Affirmance in This Case

¶ 52        Neither the appellate court nor the majority cites any authority supporting a holding that this notice violated the due process clause. The appellate court cited *Coleman* for the proposition that "notices that mislead about the nature of administrative decisions are insufficient to satisfy due process." 2015 IL App (2d) 140820, ¶ 16 (citing *Coleman v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 392 Ill. App. 3d 380, 386 (2009)). The decision here, however, did not mislead plaintiff about the nature of the administrative decision. The notice clearly informed her that the Department was upholding the ALJ's denial of her request to expunge the indicated finding of child abuse. The appellate court candidly admitted that this case does not present the same issue as *Coleman*, and the court also acknowledged that the flaw it found in the notice was not as serious as the one in *Coleman*. *Id.* ¶¶ 17, 21. The majority adds citations to *Bell*, 398 Ill. App. 3d at 765-66, and *Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 357 Ill. App. 3d 749, 763 (2005), but these cases simply stand for the same proposition as *Coleman*—due process is violated when the notice misleads a party about the nature of the decision that had been entered. The problem with the notices in these three cases is that they did not clearly inform the parties that judgments adverse to their interests had been entered and could have led the parties to believe that they had actually prevailed in the administrative proceedings. Thus, the notices in these cases misled the parties as to the nature of the judgment that had been entered. These cases do *not* stand for the proposition that ignorance of the law is an excuse, which is what the majority holds today. The majority faults the Department here *not* for telling plaintiff something that was incorrect but for failing to explain the mailbox rule to her. The *Bell* court acknowledged that *Carver* was the controlling law and was careful to explain that it was merely holding that notice of the board's decision must be "fair and adequate." *Bell*, 398 Ill. App. 3d at 764-65. Here, the notice of the Department's decision was fair and adequate, and the *Bell* rule simply has no application here.

¶ 53        The appellate court also based its holding on another line of inapplicable authority. The appellate court cited *Jones v. Flowers*, 547 U.S. 220 (2006), and *Passalino v. City of Zion*, 237 Ill. 2d 118 (2009), for the proposition that a notice "must be in a form such as would be chosen by someone who was genuinely seeking to convey the information that the person whose rights

- 14 -

are at risk would need to protect those rights."[9] 2015 IL App (2d) 140820, ¶ 15. There are two problems. First, the rule that those cases cite is inapplicable because it applies to notices that are required by the due process clause. See *Jones*, 547 U.S. at 226 ("due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections' " (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))); *Passalino*, 237 Ill. 2d at 124 ("[p]laintiffs' entitlement to procedural due process arises out of plaintiffs' property interest, which is affected by the zoning map amendment"). In both cases, the courts were considering the initial notice that is required before the government may interfere with a protected property interest. Here, by contrast, we are in a situation where plaintiff has already received all the process she is due, and we are considering a notice that is required by statute but not by the due process clause. Accordingly, those cases have no application.

¶ 54 Second, even if those cases did apply, they would not compel a finding that the notice here violated due process. Again, the question asked by those cases is whether the means employed were such as would be chosen by someone desirous of actually informing the recipient. *Jones* involved a house that was going to be sold for nonpayment of delinquent taxes. The commissioner of state lands sent notice to the property owner by certified mail, but the letter was returned as "unclaimed." *Jones*, 547 U.S. at 223-24. The Supreme Court held that, once the commissioner was on notice that the letter had not been received, the due process clause required the government to make reasonable additional attempts to provide notice. The Supreme Court compared failure to act in this situation as akin to doing nothing after watching the postman drop the letter down a storm drain. *Id.* at 229. In *Passalino*, this court held that providing publication notice of a meeting to discuss a zoning change that would have affected the plaintiffs' property rights was not sufficient when the plaintiffs' address was easily ascertained. *Passalino*, 237 Ill. 2d at 127. Now compare what happened in *Jones* and *Passalino* to what happened in this case. Here, the method of notice chosen by the Department was certified mail, return receipt requested, and on plaintiff's attorney, and the Department received a signed and dated return receipt. The notice spelled out plaintiff's right of judicial review, notified her of the time limit for filing such an action, and cited to the governing law. Clearly, the concerns that animated the decisions in *Jones* and *Passalino* are not even remotely present, and it is simply untenable to claim that the Department did not choose a method of notice reasonably calculated to apprise plaintiff of her rights.

¶ 55 Perhaps sensing the futility in relying on *Jones* and *Passalino*, the majority instead relies on *Mathews*, 424 U.S. 319. Unfortunately, *Mathews* is no more applicable than *Jones* and *Passalino*. The rule that the majority sets forth here is that a notice required by statute must not be misleading. *Supra* ¶ 24. But the *Mathews* test does not identify whether a notice is misleading. Rather, it is used for determining what process is due in the first instance. Under the *Mathews* test, a court considers the private interest affected by the official action, the risk of

---

[9]The rule set forth by these cases is actually worded as that, " 'when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.' " *Jones*, 547 U.S. at 229 (quoting *Mullane*, 339 U.S. at 315); *Passalino*, 237 Ill. 2d at 126 (same).

an erroneous deprivation of that action,[10] the value of any additional or different procedural safeguards, and the government's interest and the burdens that additional or different procedures would entail. *Mathews*, 424 U.S. at 335. In *Mathews*, the Supreme Court held that due process does not require an evidentiary hearing before Social Security disability benefits may be terminated and that the administrative procedures in place under the Social Security Act are sufficient to comport with due process. *Id.* at 349. Here, the majority balances plaintiff's substantial interest in her employment against the burden on the Department to rewrite its notice and finds an easy win for plaintiff. *Supra* ¶¶ 24-28.

¶ 56    Again, plaintiff has already received the process she was due. She received notice and an opportunity to be heard before her request to expunge the indicated finding was denied. We held in *Carver* that due process does *not* require judicial review of administrative decisions, nor does it require notice of the statutory right of judicial review. Unlike *Mathews*, we are considering a notice not required by the due process clause in a proceeding not required by the due process clause, after a person has already received due process. Thus, the *Mathews* test has no relevance to the issue before us.

¶ 57    The proof that *Mathews* does not apply here is that the *Carver* holding would have been impossible if it did. If the *Mathews* test yields an answer that an explanation of the mailbox rule is required to satisfy the due process clause, then certainly it would also yield the answer that notice of the 35-day time limit was required. To see this, we merely have to redo the majority's analysis but change the facts to the notice not containing the 35-day time limit. As the majority notes, plaintiff had a protectable property interest in her employment. There would clearly be a risk of erroneous deprivation of that interest if she was not informed of the time limit for seeking judicial review. The value of telling her of the time limit is manifest and obvious, and the burden on the Department to add this language to a boilerplate notice is trivial and insignificant. Thus, under the *Mathews* test, notice of the 35-day time limit would be required. But that is *not* what the court held in *Carver*. This court held that the administrative procedures in place were sufficient to satisfy due process without judicial review, and therefore the due process clause did not require notice of that right or of the 35-day time limit. *Mathews* simply does not apply here, and if it did, *Carver* would have been decided the other way. It simply cannot be the case that *Mathews* is the proper test for determining what process is due in the first instance, but is *not* the test for determining whether notice of the statutory right to administrative review and the 35-day time limit is required, but then *is* the test for determining whether that same notice contains enough information. *Mathews* has no more application here than the cases relied on by the appellate court, and thus neither the appellate court nor the majority has cited *any* authority supporting a decision in plaintiff's favor.

¶ 58    The can of worms that the majority is opening here should be obvious. Because it is always relatively easy to make a wording change in a form notice, not making such a change will

---

[10]When considering the risk of an erroneous deprivation of the action, the majority bolsters its argument by relying on the fact that plaintiff ultimately prevailed on the merits in the trial court. *Supra* ¶ 26. This is clearly improper. We know that plaintiff prevailed in the trial court only because the court improperly refused to dismiss a complaint over which it had no jurisdiction. The interests of the parties must be considered at the time the notice was sent. *Cf. Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir. 2000) ("[t]he operative question is whether notice was adequate at the time the notice was sent").

almost always lose when balanced against a person's protected property interest. It is difficult to see how further wording changes spelling out a person's rights under the law would not be required both here and in countless other notices in settings in which a person has a protectable property interest, even if that person has already received due process. The *Mathews* test is designed to ensure that a party receives the minimum amount of process necessary to satisfy the due process clause. Now that the majority has employed it where it does not apply, it can easily be seen how it will lead to a requirement that the government provide the maximum information possible to spell out a party's legal rights and to guarantee that a party is not confused about the law in any fashion.

¶ 59                          Plaintiff Did Not Claim That She Was Confused
                                      by the Service Date

¶ 60        It is also noteworthy that plaintiff did not even claim that confusion over the service date led to the late filing in this case. In her affidavit attached to her response to the Department's motion to dismiss, plaintiff explains that she received her copy of the administrative decision on either August 12 or 13, 2013, at her attorney's office. She decided to hire a different attorney to handle the appeal. She contacted 15 or 16 attorneys and met personally with 5 or 6 of them. Most of the attorneys she spoke with said that they would not handle the case due to the nature of the allegations. On September 4, 2013, she retained Malia and Rinehart to handle the appeal. September 4 was one day after the jurisdictional deadline had expired. So, according to plaintiff's own affidavit, she had trouble finding an attorney to handle her case, and she was not able to retain one until after the jurisdictional deadline had expired. She did *not* claim in her affidavit that she thought that the service date was other than July 30, 2013. The problem appears to be one of not finding an attorney in time rather than confusion over the service date. This is a truly unfortunate situation, but it in no way means that the Department violated plaintiff's constitutional rights.

¶ 61                          No One Has Identified Any Other Possible
                                  Service Date Besides July 30, 2013

¶ 62        It is also remarkable that plaintiff has never said what she thought the service date was. Surely if the case one is making is that they were misled as to the proper service date, that person has an obligation to identify the date she thought was correct. Yet plaintiff never identified any other date, nor did her attorney, the appellate court, or the majority. The majority cannot complete this sentence: "a reasonable person in plaintiff's position would have believed that the service date was ___." Was what? No one will say. The only date on anything was July 30, 2013. This was the date on the decision following the words "CERTIFIED MAIL." It was also the date on the certified mail form and on the certified mail return receipt. There was no other date to find because there was no other date. The most diligent recipient could have found no date other than July 30, 2013. Unless there is another date, then it is not possible that plaintiff was misled.

¶ 63                                    CONCLUSION

¶ 64        In closing, I would say that, like the majority, I sympathize with plaintiff's plight. It is truly unfortunate that she could not find an attorney before the jurisdictional deadline had run. Her

plight, however, had nothing at all to do with a violation of her constitutional rights by the Department. I also agree with the majority that the notice could have used wording that would be more helpful to a layperson. It could have explained that the service date was the mailing date or simply said that the deadline was 35 days from the date on the letter. The fact that it did not do so, however, does not mean that the due process clause was violated. Our case law establishes conclusively that it was not. The proper outcome here would have been to reverse the appellate court while admonishing the Department that it would be helpful to word its notice differently. Ironically, it was plaintiff's own attorney who made this final point the best when he said at oral argument, "there's a real distinction here between *** best practices and what is essentially required by due process." I agree, and that is why I cannot join the majority opinion.

¶ 65        CHIEF JUSTICE KARMEIER joins in this dissent.