2020 IL App (1st) 182257-U

THIRD DIVISION
May 13, 2020

No. 1-18-2257

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JEROME ROBERTSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CH 10914 |
| | ) | |
| THE ILLINOIS CIVIL SERVICE COMMISSION; | ) | |
| WILLIAM A. SCHROEDER, Chairman; | ) | |
| C.A. FINCH, ANITA M. CUMMINGS and | ) | |
| CASEY URLACHER, Commissioners; | ) | |
| THE DEPARTMENT OF CORRECTIONS; and | ) | |
| JOHN R. BALDWIN, Director of Corrections, | ) | Honorable |
| | ) | Kathleen M. Pantle, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County confirming the Illinois Civil Service Commission's July 15, 2016 final administrative decision is affirmed; plaintiff's due process rights were not violated, there was no double jeopardy, and the Commission's final decision was not in error or against the manifest weight of the evidence nor was his discharge unreasonable or arbitrary where the evidence showed plaintiff failed to give his employer a written report of his arrests for criminal charges within five working days as required and engaged in behavior that violated the Illinois Department of Corrections' rules of conduct.

¶ 2    This appeal involves administrative review of the Illinois Civil Service Commission's (Commission) July 15, 2016 final administrative decision (Decision) which affirmed the action taken by the Illinois Department of Corrections (IDOC) in terminating plaintiff's employment with IDOC as a senior parole officer.  On August 18, 2016, plaintiff filed a complaint in the circuit court of Cook County seeking, among other relief, administrative review of the Decision. Following a hearing, on August 16, 2017, the trial court entered an order affirming IDOC's decision to discharge plaintiff.  Thereafter, plaintiff appealed arguing he was not afforded due process, he was subject to double jeopardy, and that the July 15, 2016 Decision was against the manifest weight of the evidence.  For the reasons set forth below, we affirm the Commission's July 15, 2016 Decision terminating plaintiff's employment with IDOC.

¶ 3                                    BACKGROUND

¶ 4                            Basis for Plaintiff's Termination

¶ 5    Plaintiff, Jerome Robertson, had been employed by IDOC since November 1998.  He was working as a senior parole agent in September 2015 when IDOC recommended he be discharged for cause having violated various IDOC rules and standards of conduct (IDOC Rules).  The IDOC alleged:

¶ 6    (1) violation of IDOC Rule 120.30 Conduct of Individual (Charge One) due to an incident on October 24, 2010 where plaintiff pulled out his firearm, he shot a 16-year-old boy in the leg, failed to provide medical assistance or call 911, and fled the scene, (20 Ill. Adm. Code 120.30 (2006));

¶ 7    (2) violation of IDOC Rule 120.40 Compliance with Laws and Regulations (Charge Two) because he failed to report to the IDOC that he was arrested on criminal charges after the October 2010 incident in accordance with the regulation (20 Ill. Adm. Code 120.40 (2006));

¶ 8     (3) violation of IDOC Rule 120.30 Conduct of Individual (Charge Three) involving plaintiff's arrest on January 10, 2012 for criminal sexual abuse of a minor after his daughter reported that he raped her in April 2010 (20 Ill. Adm. Code 120.30 (2006)); and

¶ 9      (4) violation of IDOC Rule 120.40 Compliance with Laws and Regulations (Charge Four) because he failed to report his January 2012 arrest in accordance with the regulation (20 Ill. Adm. Code 120.40 (2006)).

¶ 10    The Commission found that the IDOC failed to prove Charge Three but found the IDOC proved all other charges and recommended plaintiff's discharge.

¶ 11    Plaintiff had previously been subject to discipline by the IDOC.  In June 2010, plaintiff was disciplined and ultimately suspended for 90 days after he was found to have:

> "(1) *** knowingly socialized with a released offender; (2) *** used state equipment and databases for personal purposes; (3) *** released confidential information about a released offender; and (4) *** impeded IDOC's investigation by giving **** misleading and false information during the investigation."
>
> *Robertson v. Civil Service Comm'n*, 2012 IL App (1st) 112804-U, ¶ 7.

¶ 12    On October 24, 2010, the day prior to his scheduled return to work, plaintiff was arrested in Milwaukee on the felony gun charges noted in Charges One and Two above.  Plaintiff remained in custody for seven days.  He was placed on suspension pending judicial determination on the criminal charges.  On January 10, 2012, plaintiff was arrested for aggravated criminal sexual abuse of a minor noted in Charges Three and Four above.  On September 4, 2015, plaintiff's employment with IDOC was terminated.

¶ 13                     Hearing on Plaintiff's Termination

¶ 14    Plaintiff timely submitted to the Commission a written request for hearing concerning his discharge. At the evidentiary hearing which took place over the course of four days before an administrative law judge (ALJ), witnesses included plaintiff; IDOC investigator Andrew Pronger; South Holland Police Department (SHPD) sergeant Jill Mackowiak; parole agent Jessica Boulton; former executive Chief to the Director for IDOC, Jesse Montgomery; and Chief of Labor Relations for IDOC, Edward Jackson. The following testimony relevant to our analysis on appeal was presented.

¶ 15                              Plaintiff's Testimony

¶ 16    Plaintiff testified he became employed with IDOC in 1998. At the time of the hearing, plaintiff had not worked at IDOC for over five years. In 2010 he was employed by the department as a senior parole officer. In 2010, he served a 90-day suspension for charges related to socializing with a released offender, utilizing IDOC equipment for personal reasons, disclosing confidential information about the release of an offender, and giving false information.

¶ 17    On the last day of plaintiff's suspension, October 24, 2010, while still on administrative leave, he was arrested in Milwaukee, Wisconsin on felony gun charges after he accidentally shot a 16-year old young man in the knee. Plaintiff was leaving the apartment of a female when her daughter pulled out a butcher knife. He pulled out his firearm and told the daughter to lower the weapon which she did. Plaintiff was stabbed in his right hand causing the firearm to discharge hitting the young man who was also present. Thereafter he observed that the young man had a flesh wound as a result of the shooting and he left the scene because the daughter still had the knife. Plaintiff drove around the corner and his first call was to his lawyer to tell him he was going to turn himself in. The lawyer told him to put the gun in the trunk which he did.

- 4 -

¶ 18     Plaintiff was pulled over while driving and was arrested 30 minutes after the incident.  He identified himself as an employee of IDOC.  Plaintiff testified that he reported the arrest because while in custody he told the Wisconsin police to call IDOC and let them know he was arrested.  Plaintiff felt he had complied with IDOC's reporting requirement based on this telephone call.  Plaintiff remained in custody for six days.

¶ 19     Plaintiff testified that he thought he wrote an incident report after the arrest, however, could not recall the exact date, but believed it to be January 7 or 11, 2011.  He testified the incident report stated the date and approximate time of his arrest and that he was not guilty of the charges.  He thought he faxed it from a currency exchange to Tinsley Harris and IDOC's human resources but did not have a copy of the paperwork or confirmation of the fax.  He also testified that he thought the week following his release from custody, his attorney faxed something to IDOC giving them further notice but later testified he could not recall if his attorney faxed the incident report.  Plaintiff did not take any steps to give further notice to IDOC while in custody.

¶ 20      Plaintiff was suspended pending judicial verdict related to his gun charges.  This suspension occurred after he was given notice of the employee review hearing.  He stated he did not appear at the hearing because he had not been reinstated by IDOC.

¶ 21     The criminal gun charges were dismissed on December 5, 2011.  A grievance was filed thereafter by plaintiff's union for which plaintiff received backpay.

¶ 22     In April 2010 plaintiff's daughter reported to the police that he had sexually assaulted her.  On May 7, 2010, plaintiff met with South Holland police officers for an interview and was informed of the sexual abuse allegations.  Plaintiff asserted his fifth amendment rights.  He was not arrested on that date.  Plaintiff did not document or report the meeting with anyone at IDOC.

¶ 23    Plaintiff was arrested for criminal sexual abuse of a minor on January 10, 2012 and was held in custody until he was released on bond on July 21, 2012. An employee of IDOC was present when plaintiff was arrested and assisted with the arrest. While incarcerated, plaintiff met an IDOC employee, his union representative, and a friend. He did not instruct any of his visitors to notify IDOC he was in custody. He testified that he did not serve notice on IDOC because he figured they already knew as they were present when he was arrested and as a result, he did not have to do anything further. Plaintiff also stated he did not have access to a computer. Plaintiff did not make a written report of the incident until July 22, 2012 after he was released from custody. The written report was allegedly made by asking senior parole agent, Jessica Boulton, to pick up the incident report and turn it into his supervisor. The report was handwritten, and plaintiff did not have a computer. He did not make a copy of the report.

¶ 24    Plaintiff was put on suspension pending judicial verdict regarding the sexual abuse charges and was given notice of that suspension.

¶ 25    Plaintiff denied sexually assaulting his daughter and he was found not guilty after a trial during which his daughter recanted the allegations that plaintiff had raped her.

¶ 26    Plaintiff had not had a performance evaluation since 2010, but when he did it was "all meets and *** exceeds" which was typical for him.

¶ 27                            Jessica Boulton's Testimony

¶ 28    Jessica Boulton contradicted plaintiff's testimony that he gave a written report to her after his arrest. Boulton testified she was a senior parole agent for IDOC. Boulton denied she received any paperwork from plaintiff or that she was asked by plaintiff to give paperwork to someone else at IDOC.

¶ 29                            Andrew Pronger's Testimony

¶ 30    Andrew Pronger testified that he worked at IDOC in the position of internal security investigator. Pronger investigated staff misconduct and was assigned to investigate plaintiff's gun charge and was ultimately involved in investigating the sexual abuse charge. He testified that he was familiar with IDOC's rules and standards of conduct for employees. He was not aware of plaintiff providing IDOC with notice of either arrest and concluded that plaintiff had violated IDOC's rules and standards of conduct.

¶ 31                          Jesse Montgomery's Testimony

¶ 32    Jesse Montgomery testified that he has held various roles at IDOC to include Deputy Director of Operations, Acting Deputy Director, and Chief of Parole. In those roles he was familiar with the rules governing parole officers and their training. He explained the standards of conduct require employees to conduct themselves, on and off duty, in a professional manner and should not reflect unfavorably on IDOC. He also stated that any arrest must be reported to IDOC in writing within five days. Montgomery was aware of plaintiff's case. He did not believe plaintiff reported the gun incident to IDOC although he was required to do so.

¶ 33    Montgomery discussed employee review hearings explaining the process includes notice to any employee of charges levied against them and a hearing to discuss the charges. With respect to the gun incident, plaintiff was charged with "conduct of an individual" and "compliance with laws and regulations." Plaintiff was given notice with respect to the gun charge. Montgomery believed plaintiff's conduct reflected poorly on IDOC because his being charged with a felony, regardless of a conviction, reflected badly on IDOC. He further testified that "[a] Parole Agent that would be supervising and ensuring public safety, which is a larger part of their responsibility, would be unbecoming violating public safety rules." Moreover, he

noted "[i]t would be very hard to supervise a clientele if you're *** facing charges for the same thing that your client is actually facing or have done."

¶ 34                          Edward Jackson's Testimony

¶ 35    Edward Jackson testified that he was Chief of Labor Relations for IDOC and reviewed employee grievances and discipline and recommended discipline for employees charged with rule or policy violations. He was familiar with plaintiff's case and the standards of conduct and written reporting requirements governing IDOC employees. He was not aware of plaintiff notifying IDOC of his arrest relating to the gun incident. With respect to the criminal sexual abuse charges, Jackson also explained IDOC's reporting requirement and noted that it was not waived because an employee of IDOC is present at the arrest.

¶ 36    He explained employees are placed on administrative leave when IDOC is aware of an incident but still investigating and employees are placed on suspension pending judicial verdict when an employee has been charged with a felony. Jackson reviewed the charges against plaintiff and believed suspension pending judicial verdict was appropriate action by IDOC. He testified that after the gun charges were dismissed "the employee was brought back [from suspension pending verdict] and placed on paid administrative leave, we gather the facts on the subsequent criminal charge [referring to the criminal sexual abuse charge], and then place the employee on suspension pending judicial verdict for the second charge." He confirmed that plaintiff was reinstated following the dismissal of the criminal gun charges and received backpay.

¶ 37    Jackson explained it is an unusual situation for an employee to be "charged with a felony, and then the case was concluded and ultimately not convicted of that felony, and then immediately on the heels of that be charged with another felony." IDOC did not make a

disciplinary decision on the gun charges upon the dismissal of the criminal charges because the criminal sexual abuse charge remained pending. IDOC instead placed plaintiff back on suspension pending judicial verdict and waited until the criminal sexual abuse case was concluded before making its decision to discharge plaintiff.

¶ 38    Jackson indicated in arriving at a conclusion of disciplinary action they look at the charges, the employee rebuttal to the charges, the prior disciplinary history, the length of service with IDOC, and whether all rights were afforded the employee under the Collective Bargaining Agreement and personnel rules. He explained that irrespective of how criminal charges are resolved, IDOC still looks at the underlying conduct to determine whether and what disciplinary action is appropriate. Here, plaintiff's conduct was so egregious that it warranted discharge after consideration of the totality of the circumstances.

¶ 39                    Decision Following Review Hearing

¶ 40    Based on this evidence on July 1, 2016, the ALJ in its Proposal for Decision (Proposal) affirmed the action taken by IDOC in terminating plaintiff's employment based on Charges One, Two, and Four and forwarded its Proposal to the Commission.

¶ 41    In its Proposal the ALJ concluded that Charges One, Two and Four had been proven by a preponderance of the evidence, but "[C]harge [Three] has not been proven." The ALJ specifically stated in its Proposal "that the alleged sexual assault is being disregarded entirely when considering the appropriate level of discipline due to the lack of evidence and the overly prejudicial nature of the unproven allegations."

¶ 42    With respect to the gun incident that ALJ's Proposal stated "[s]ince [plaintiff] provided the only testimony as to what occurred, that is what will be judged against this standard."

¶ 43    The ALJ noted plaintiff's own account of his actions during the gun incident displayed "a disregard for good sense and the law that sound public opinion would recognize as good cause to remove him from the position of parole agent." Here the ALJ concluded that plaintiff's actions "from discharging his firearm to failing to render aid to the victim to fleeing the scene prior to the arrival of law enforcement – warrant discharge" because his "conduct was not professional, was unbecoming of the State employee, and/or reflected unfavorably on [I]DOC." Finally, the ALJ pointed to plaintiff's "questionable credibility" as having "a significant negative impact on his job performance as a parole agent" where "[I]DOC would have to question the legitimacy of any activity he may perform or report in the course of his duties" and noting that requiring its employees to be trustworthy is not an unreasonable expectation which plaintiff could no longer meet.

¶ 44    The ALJ specifically stated "there are concerns as to his post-gunshot actions" noting (a) the agency's expectation that a parole officer would not leave the scene of the shooting entirely particularly where the only threat was not from a firearm but a butcher knife; (b) that plaintiff's first call was to his attorney not 911, the police department or IDOC; and (c) even after speaking with his attorney he still did not call 911 or return to the scene.

¶ 45    The ALJ made certain credibility findings. In its discussion of plaintiff's credibility the ALJ noted that it "determined that parts of [plaintiff's] credibility were in question because he made self-serving statements without evidence to support them" and claims that "there was no evidence to cause doubt in [plaintiff's] testimony."

¶ 46    The ALJ went on to conclude that plaintiff's discharge from IDOC was appropriate. The ALJ specifically found plaintiff was a senior parole agent and was continuously employed with IDOC since November 9, 1998. In considering plaintiff's performance record, the ALJ noted

plaintiff had not worked as a parole agent in over five years so "there was no recent performance evaluations to establish his performance record." The ALJ also commented on plaintiff's prior 2010 disciplinary action involving a 90-day suspension stating plaintiff "received the maximum disciplinary suspension short of discharge" and concluded "that the agency was not out of line in moving up to the next logical disciplinary level – discharge – for violations similar to those proven in this matter."

¶ 47     On July 15, 2015, in its Decision the Commission affirmed and adopted the ALJ's Proposal in its entirety and certified it to the Director of the Illinois Department of Central Management Services for enforcement.

¶ 48                              Circuit Court Proceedings

¶ 49     On August 18, 2016, plaintiff filed a Complaint for Administrative Review in the chancery division of the circuit court of Cook County. The complaint was subsequently amended various times. Plaintiff's final amended complaint sought not only administrative review of the decision to discharge him but also alleged IDOC violated Title VII of the Civil Rights Act of 1964 (Title VII) when it "subjected Plaintiff *** to race discrimination (disparate treatment) and retaliation ***[.]"

¶ 50     On August 16, 2017, the trial court entered an order and subsequent Corrected Order on the administrative review claim affirming IDOC's decision to discharge plaintiff holding (1) "[t]he Commission's findings [were] not against the manifest weight of the evidence[;]" (2) "[t]he Commission's decision to terminate [plaintiff was] not arbitrary, unreasonable or unrelated to the requirements of service[;]" and (3) plaintiff did not demonstrate "a valid reason to disturb the discretionary determination of the Board[.]" The matter was continued to September 20, 2017 for status. On that date, the remaining Title VII claims were transferred to the Law

Division with the stated reason being that "Plaintiff seeks monetary relief and Defendant requests jury trial."

¶ 51    On September 21, 2018, an agreed order was entered voluntarily dismissing plaintiff's count II alleging Title VII violations and further stated "[u]pon entry of this Order, all claims in this lawsuit have been disposed of.  Plaintiff intends to seek appeal of the final order entered previously by this Court in this lawsuit regarding his Administrative Review Claim."

¶ 52    Thereafter, plaintiff timely appealed noting that the "only Court Order under review is the Court Rulings of August 16, 2017, affirming the Hearing Officer's Ruling Supporting [IDOC's] termination of Plaintiff."

¶ 53    This appeal followed.

¶ 54                                ANALYSIS

¶ 55    On appeal plaintiff argues (1) he was not afforded due process and was subject to double jeopardy and (2) the July 15, 2016 Decision was against the manifest weight of the evidence. We review *de novo* whether a plaintiff's due process rights were violated.

¶ 56    We review *de novo* whether a plaintiff's due process rights were violated.  *Carroll v Department of Employment Security*, 389 Ill. App. 3d 404, 410 (2009).  An administrative agency's findings and conclusions on questions of fact are considered prima facie true and correct.  735 ILCS 5/3–110 (West 2012).  As such, an agency's factual findings are not to be reweighed by a reviewing court and are to be reversed only if they are against the manifest weight of the evidence.  *Parikh v. Division of Professional Regulation of Department of Financial and Professional Regulation*, 2014 IL App (1st) 123319, ¶ 27.  Factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 57    With respect to review of final administrative decisions:

> "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact. [Citation.]  Purely factual findings are reviewed under a 'manifest weight of the evidence' standard, under which the agency's findings are considered '*prima facie* true and correct' unless 'the opposite conclusion is clearly evident.' \*\*\*  On the other hand, if a purely legal question is at issue, then the standard of review is *de novo*; this standard is 'independent and not deferential.'  \*\*\*
>
> Where an agency's decision involves a mixed question of law and fact, we will not reverse the agency's decision unless it is 'clearly erroneous,' which occurs only when the reviewing court is left with the definite and firm conviction that a mistake has been committed."  (Internal quotation marks omitted.) *Lipscomb v. Housing Authority of Cook County*, 2015 IL App (1st) 142793, ¶¶ 14-15.

¶ 58    In reviewing a final decision under the Administrative Review Law a two-step process is employed: (1) the first step is to determine whether the agency's factual findings are against the manifest weight of the evidence and (2) the second step is to determine whether the findings of fact provide sufficient basis for the agency's determination that cause for discharge existed. *McDermott v. City of Chicago Police Board*, 2016 IL App (1st) 151979, ¶ 18.  The Commission's decision to discharge will not be reversed unless it "acted unreasonably or arbitrarily by selecting a type of discipline that was inappropriate or unrelated to the needs of the service."  (Internal quotations omitted.)  *Id.* at ¶ 35.

¶ 59    We address each of plaintiff's arguments and disagree as set forth more fully below.

¶ 60                    Due Process and Alleged Irregularities

¶ 61    Under the umbrella of his due process argument, plaintiff raises various, what he terms, "irregularities" that occurred at the hearing before the ALJ. We find plaintiff's claims without merit and further note plaintiff's failure to cite to any authority for many of his positions in violation of Illinois Supreme Court Rule 341. See IL. S. C. R. 341 (eff. May 25, 2018) (requiring appellant's arguments to cite the authorities upon which they relied).

¶ 62    Administrative proceedings are governed by due process requirements. *Carroll*, 389 Ill. App. 3d at 410. A party claiming a due process violation has the burden of establishing prejudice. *All American Title Agency, LLC v. Department of Financial and Professional Regulation*, 2013 IL App (1st) 113400, ¶ 36. As noted above, we review *de novo* whether a plaintiff's due process rights were violated. *Carroll*, 389 Ill. App. 3d at 410.

¶ 63    "Procedural due process protects against mistaken or unjustified deprivations of life, liberty, or property." *Grimm v. Calica*, 2017 IL 120105, ¶ 21. Due process is a flexible concept, whose requirements depend on the nature of the interest affected and the context in which the deprivation occurs. *Id*. "[A] claim of a due process violation will be sustained only upon a showing of prejudice in the proceeding." *Sudzus v. Department of Employment Securities*, 393 Ill. App. 3d 814, 825 (2009). Due process includes "the opportunity to be heard, the right to cross examine witnesses, and impartiality in ruling on the evidence." *Kimble v. Illinois State Board of Education*, 2014 IL App (1st) 123436, ¶ 78. It "requires notice that is reasonably calculated, under all of the circumstances, to apprise the parties of the pendency of the action and to afford them an opportunity to present objections." *In re Abandonment of Wells Located in Illinois by Leavell*, 343 Ill. App. 3d 303, 308 (2003). It also mandates fair and impartial

procedure. *Kimble*, 2014 IL App (1st) 123436, ¶ 77. The "essence of due process is based on the concept of fundamental fairness" and is satisfied with "a fair hearing before a fair tribunal." *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 983 (1999).

¶ 64     Plaintiff makes a number of claims relevant to Charge Three. Charge Three alleged plaintiff violated IDOC Rule 120.30 requiring employees to "conduct themselves in a manner that will not reflect unfavorably on the [IDOC] and shall not engage in conduct that is unbecoming of an employee or that may reflect unfavorably on or impair the operations of the Department." 20 Ill. Adm. Code 120.30 (2006). Charge Three specifically related to the criminal sexual abuse of a minor charge brought against plaintiff based on his daughter's allegation that plaintiff raped her in April 2010. Plaintiff argues "irregularities" relevant to Charge Three to include (1) defendants' counsel's question to Jill Mackowiak, the SHPD officer who interviewed plaintiff's daughter concerning the sexual abuse allegations, about the credibility of the initial outcry relative to plaintiff's daughter's subsequent recantation and the response to that question permitted over objection and (2) that evidence was brought out by his own counsel establishing the criminal sexual abuse of a minor charge went to trial after which plaintiff was found not guilty without providing further explanation or argument.

¶ 65     However, with respect to the alleged due process violations concerning Charge Three, the ALJ's Proposal adopted by the Commission found no "admissible evidence that the aggravated sexual assault occurred" and thus concluded "[C]harge [Three] has not been proven." We note that these alleged errors bear only on Charge Three for which plaintiff was found not liable. Accordingly, our resolution of these issues would have no effect on the results as to the parties and the controversy and therefore decline to address these claims of error. See *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1027 (1994) (stating "[w]hen it becomes apparent that an opinion cannot

affect the results as to the parties or the controversy before it, the court should not resolve the question merely for the sake of setting a precedent or to govern future potential cases").

¶ 66    Plaintiff also argues the ALJ "allowed hearsay evidence, like personnel records, police reports, etc., to be place[d] into evidence in violation of Civil [S]ervice Rule 1.233(a) *** stat[ing] the Rule[s] of Evidence in civil proceedings was to be followed." Plaintiff further argues that the Employee Review Packet should not have been entered into evidence over his objection because plaintiff was not present at that Employee Review Hearing sustaining the IDOC charges and Montgomery, the [I]DOC Chief of Parole, had never spoken to him about the packet. We address the ALJ's admission into evidence of plaintiff's personnel records, police reports, and his Employee Review Hearing Packet as these are the only three arguments specifically raised by plaintiff albeit without citation to the record or authority beyond a general rule applying civil rules of evidence to administrative proceedings. See *New v. Pace Suburban Bus Service*, 398 Ill. App. 3d 371, 384 (2010) (stating "[t]his court is not a repository where the burden of argument and research may be dumped and we will not scour the record to develop argument for a party").

¶ 67    Illinois Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay statements are generally not admissible in administrative proceedings. *Sudzus*, 393 Ill. App. 3d at 682. Notwithstanding, "[i]t is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural probative effect [and] *** in an administrative proceeding *** may be considered by the administrative body and by the courts on review." (Internal quotation

marks omitted.) *S.W. v. Department of Children and Family Services*, 276 Ill. App. 3d 672, 682 (1995).

¶ 68    Moreover, even inadmissible hearsay evidence will not be deemed prejudicial error where there is sufficient competent evidence to support an administrative decision. *Sudzus*, 393 Ill. App. 3d at 682. While procedural due process protections generally preclude the admission of hearsay evidence in an administrative proceeding, where there is sufficient competent evidence to support an administrative decision, the improper admission will not be considered prejudicial error. *Kimble*, 2014 IL App (1st) 123436, ¶ 79.

¶ 69    At trial defendants introduced exhibit two which was identified as plaintiff's personnel forms staring in 2010 and including "what happened, when it happened, what actions were taken and when they were reported to the [IDOC]." Plaintiff's counsel was specifically asked if he had an objection to which he responded "[n]o objection" after which the court admitted the exhibit into evidence. Accordingly, the exhibit, admitted without objection, could appropriately be considered by the ALJ as well as this court. See *S.W.*, 276 Ill. App. 3d at 682.

¶ 70    As to the police reports included in defendants' exhibit 4(a), Pronger's investigation file, defendants' counsel, when requesting the exhibit be moved into evidence, stated:

> "I would like to move Mr. Pronger's investigation file into evidence not for the purpose of the truth of the matter, but to simply show that what the [IDOC] did as part of its investigation."

¶ 71    Over plaintiff's counsel's hearsay objection the ALJ moved the exhibit into evidence stating:

> "It is hearsay. But here's what I'm going to do. I'll allow it for two purposes: [one] is to show *** [t]he agency's investigation and the other one would be that

if *** there is future testimony that was used in making the determination as to the level of discipline posed, I would consider it for *** that but certainly nothing to go to the truth of the matter asserted in this matter. If that doesn't come out [I will] disregard it entirely so I'll admit both."

¶ 72    Because the police records were not offered for the truth of the matter asserted, they are not hearsay. See Ill. R. Evid. 801(c) (eff. Oct. 15. 2015). Furthermore, plaintiff does not argue nor does he point to any evidence to suggest the ALJ or the Commission considered the police reports for the truth of the matter asserted.

¶ 73    Similarly, when defendants' counsel sought to move into evidence plaintiff's first Employee Review Hearing Packet relating to the gun charges he advised the ALJ:

"I would like to move Exhibit 5(a) and (b) into evidence. It's just to show that the Department sent an Employee Review Hearing Packet to [plaintiff] to give him notice that a suspension pending judicial verdict hearing was approaching."

Plaintiff's counsel objected "on all the hearsay information contained therein" to which the ALJ responded:

"Nothing therein is being submitted for the truth of the matter asserted ***. It's merely probative so I'll admit Exhibit 5(a) and 5(b)."

¶ 74    Thus, the Employee Review Hearing Packet was not offered for the truth of the matter asserted and is not hearsay. See *id*. As with the police records, plaintiff fails to argue or point to any evidence to suggest the ALJ or the Commission considered the Employee Review Hearing Packet for the truth of the matter asserted.

¶ 75    Regardless, even if the personnel records and police reports were improperly admitted as hearsay evidence, as detailed below in affirming the Decision, here we find no prejudicial error

because there is sufficient other competent evidence to support the administrative decision.  See *Sudzus*, 393 Ill. App. 3d at 682.

¶ 76    Plaintiff argues that the ALJ applied an improper burden of proof and shifted the burden of proof "holding [plaintiff] to the task of disproving the [IDOC's] allegations rather than observing the evidence before him."  Plaintiff contends this is because the ALJ "determined that parts of [plaintiff's] credibility were in question because he made self-serving statements without evidence to support them" and claims that "there was no evidence to cause doubt in [plaintiff's] testimony."  We disagree that an improper burden of proof was applied or that the burden of proof was improperly shifted to plaintiff.

¶ 77    Plaintiff is correct, the appropriate burden of proof in the administrative proceedings was a preponderance of the evidence.  See 80 Ill. Adm. Code 1.232(a), as amended by 19 Ill. Reg. 12451 (eff. Aug. 21, 1995).  "Proof by a preponderance of the evidence means that the fact at issue *** is rendered more likely than not."  *People v. Houar*, 365 Ill. App. 3d 682, 686 (2006).  Plaintiff conflates defendants' burden of proof with the fact finder's function "to weigh the evidence, determine the credibility of the witnesses, and resolve conflict in the evidence."  See *Parikh*, 2014 IL App (1st) 123319, ¶ 27.  As to the fact finder's function to determine the credibility of the witnesses, such "[f]indings of fact and credibility determinations on review are held to be *prima facie* true and correct and should not be overturned unless they are against the manifest weight of the evidence."  *Id.* at ¶ 28.  "It is not our function to reevaluate the witness credibility or resolve conflicting evidence *** [and where] the issues are merely ones of conflicting testimony or credibility of witnesses, the determinations of the agency should be upheld."  *Id.*

¶ 78    Here, the ALJ, in its Proposal affirmed and adopted by the Commission, sets forth the defendants' burden of proof as being a preponderance of the evidence and references this burden in its application to the facts comparing this standard to the much higher burden in criminal proceedings.  In Charge One regarding the shooting, it is alleged plaintiff's violated IODC's standards of conduct.  We note the ALJ's Proposal did not focus on the issue of whether the shooting was intentional or accidental, but rather on plaintiff's actions after the shooting.  There is no factual dispute as plaintiff admitted after the shooting he left the scene without rendering help to the 16-year old shooting victim.  The ALJ concluded that plaintiff's conduct in leaving the scene of a shooting in which he was involved without rendering help failed to meet IODC's standards of conduct.  The record does not reflect any improper burden shifting.

¶ 79    In Charges Two and Four the issue was whether plaintiff failed to report his arrests within five days.  The IDOC submitted evidence it never received a written report of plaintiff's arrests.  Again, plaintiff admitted he did not file a written report within the requisite five days of his two arrests.  Although plaintiff testified he gave a written report about his arrest for criminal sexual abuse to a senior parole officer several months after his arrest, that individual denied ever receiving paperwork from plaintiff.  There is no evidence the ALJ or Commission failed to apply the appropriate burden in finding defendants had met their burden with respect to Charges One, Two, and Four.

¶ 80    As to plaintiff's credibility, the ALJ devotes an entire section of the Proposal to explaining its credibility finding as to plaintiff.  The ALJ explained that where plaintiff "made self-serving [or unbelievable] statements that we unsupported by available, but unproduced, corroborating evidence, his testimony was found not to be credible."  Plaintiff points to no specific evidence to show the ALJ's credibility findings were against the manifest weight of the

evidence and we will not disturb the ALJ's findings without evidence that the opposite conclusion is clearly evident. See *id.* Moreover, as noted below we also find the ALJ's Proposal adopted and affirmed by the Decision as to Charges One, Two, and Four was not against the manifest weight of the evidence. The ALJ found plaintiff to be not credible as to his alleged actions in providing IDOC written notice of his arrests. Such findings are not prejudicial as plaintiff argues, but a necessary part of the fact finder's role. See *id.* There was specific evidence presented by defendants directly contradicting plaintiff's testimony which was found to be credible. This is a credibility finding we will not disturb, not a burden shift as plaintiff argues. See *id.* (holding there was no burden shift where the fact finder's determination was based on a witness' testimony found to be more credible than the plaintiff's contradictory testimony as to the events giving rise to the charges against him).

¶ 81 Plaintiff also argues that "even though the criminal charges were dismissed against [plaintiff], the [ALJ] was actually horrified by them and seemed not to be able to discount them by his statement 'Besides the fact that the charges are, somewhat horrendous against him[.]' " We find there is no merit to plaintiff's argument. "[D]ue process requires that administrative proceedings be adjudicated by an impartial tribunal." *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 571 (2007). The mere possibility of prejudice by the tribunal is insufficient to show bias. *Id.* Instead, to prove bias "the plaintiff must overcome a presumption of honesty by showing in the record that the administrative proceedings were either tainted by dishonesty or contained unacceptable risk of bias." (Internal quotation marks omitted.) *Id.* The ALJ's reference to the charges against plaintiff as horrendous does not overcome the presumption of honesty. Nothing in this record or even the ALJ's statement suggests any dishonesty by the tribunal. Moreover, any risk of bias based on the ALJ's statement is completely belied by the finding that Charge

Three concerning the criminal sexual abuse of his daughter had not been proven because defendants failed to provide admissible evidence that the aggravated sexual assault had occurred.

¶ 82   Plaintiff also argues that in finding termination was justified, consideration was not given to all of plaintiff's performance record citing Title 80, section 1.170 of the Illinois Administrative Code (Code). See 80 Ill. Adm. Code 1.170 (2016). This section provides guidelines for determining the level of discipline to be applied once an employee has been found liable on a charge and states as follows:

> "In determining the appropriate level of discipline, the Commission shall consider the nature of the offense, the employee's performance record, including disciplinary history, the employee's length of continuous service, and other relevant factors. Cause for discharge means some substantial shortcoming that in some way renders the employee's continuance in the position detrimental to the discipline and efficiency of the service and that law and sound public opinion recognize as good cause for the employee's removal from the position."

¶ 83   The record does not support plaintiff's argument that the ALJ and Commission did not consider all of plaintiff's performance record. In its decision the ALJ specifically found that plaintiff was a senior parole agent and was continuously employed with IDOC since November 9, 1998. In considering plaintiff's performance record, the ALJ noted that plaintiff had not worked as a parole agent in over five years so "there was no recent performance evaluations to establish his performance record." The ALJ also commented on plaintiff's prior 2010 disciplinary action involving a 90-day suspension. Thus, it is clear the ALJ considered plaintiff's performance record and found that termination was justified. See *Kappel v. Police Board of City of Chicago*, 220 Ill. App. 3d 580, 589-90 (1991) (holding that the tribunal is not required to place

dispositive weight on evidence of an exemplary personnel record and "is not required to suspend, rather than discharge, an officer solely because he has provided numerous years of good service").

¶ 84    Moreover, we cannot say the decision to discharge was arbitrary, unreasonable, or unrelated to the requirements of service as would be required for reversal. *Illinois Department of Justice v. Illinois Civil Service Comm'n*, 405 Ill. App. 3d 515, 522 (2010); see also *Kappel*, 220 Ill. App. 3d at 589-90 (holding "[a]n administrative tribunal's finding of cause for discharge commands respect [citation] and 'substantial' or 'considerable deference' [citation]"). The ALJ explained the basis for its conclusion that discharge was the appropriate level of discipline noting plaintiff had last been disciplined for similarly violating standards of conduct whereupon he received the maximum disciplinary suspension short of discharge – a 90-day suspension – thereby evidencing use of progressive discipline. The ALJ noted plaintiff's own account of his actions during the gun incident displayed "a disregard for good sense and the law that sound public opinion would recognize as good cause to remove him from the position of parole agent." Here the ALJ concluded that plaintiff's actions "from discharging his firearm to failing to render aid to the victim to fleeing the scene prior to the arrival of law enforcement – warrant discharge" because his "conduct was not professional, was unbecoming of the State employee, and/or reflected unfavorably on the [I]DOC." Finally, the ALJ pointed to plaintiff's "questionable credibility" as having "a significant negative impact on his job performance as a parole agent" where the "[I]DOC would have to question the legitimacy of any activity he may perform or report in the course of his duties" and noting that requiring its employees to be trustworthy is not an unreasonable expectation which plaintiff could no longer meet.

¶ 85    Plaintiff argues that his due process rights were also violated because "a Notice of Pre-Termination Hearing and a hearing did go forward without [plaintiff] being able to present a defense which is in violation of Plaintiff's first issue on *** appeal *** [that] he was denied his constitutional rights of due process and a fair hearing." Plaintiff fails to specify which termination hearing he is referring to and points to no authority in support of his position. Notwithstanding, we believe the record establishes that plaintiff received sufficient notice of the pre-termination proceedings relative to all charges.

¶ 86    Plaintiff's employee review hearing related to the gun charges occurred on January 18, 2011. Plaintiff testified that he was placed on suspension pending judicial verdict after notice was given to him related to the gun charges. Montgomery, a former IDOC employee, also testified that plaintiff was issued an Employee Review Hearing Notice with respect to the IDOC's gun charge. Plaintiff testified that he was not present for the employee review hearing related to the gun incident, not because he had not received notice stating "I didn't even appear to the hearing because I hadn't been reinstated yet." While plaintiff was not present for the January 18, 2011 hearing, union representative, Eva Moore was present.

¶ 87    Plaintiff's employee review hearing stemming from the sexual abuse charges occurred in January 2012. Plaintiff testified that he was given notice of the suspension pending judicial verdict. Jackson, an IDOC employee, testified about the Employee Review hearing packet for discharge and the Employee Review Hearing Notice contained therein which he explained informed the employee and plaintiff's union of the scheduled hearing and the reason for the hearing.

¶ 88    Furthermore, upon receiving written notice of the September 4, 2015 discharge, plaintiff requested a hearing with the Commission. That hearing took place before the ALJ over the

course of four days – October 19, 2015, February 4-5, 2015, and April 22, 2016. Plaintiff was present at those proceedings as was the attorney representing him. Additionally, witnesses to include plaintiff were examined and cross-examined by plaintiff's counsel and arguments were made by plaintiff's counsel on his behalf. Plaintiff fails to establish how he was prejudiced and we cannot say plaintiff suffered prejudice where we find the Decision affirming plaintiff's termination was not against the manifest weight of the evidence as explained below. See *All American Title Agency, LLC*, 2013 IL App (1st) 113400, ¶ 36.

¶ 89    Plaintiff also contends "it was argued but no evidence was submitted showing that [plaintiff] had been restored to his position with the [IDOC], as alleged by Andrew Jackson, thereby denying [plaintiff's] due process right of confrontation." We disagree. Jackson's own testimony on this issue is the evidence. As to plaintiff's confrontation argument, we note that this testimony by Jackson was in fact elicited by plaintiff's counsel on cross-examination. During that examination Jackson provided the following testimony which the ALJ found credible:

> "[M]y recollection was that once the case in Milwaukee [(referring to the criminal gun charges)] was concluded, *the employee was brought back* and placed on paid Administrative Leave, we gather the facts on the subsequent criminal charge [(referring to the criminal sexual abuse charges)], and then place the employee on suspension pending judicial verdict for the second charge." (Emphasis added.)

He was later questioned further by plaintiff's counsel as follows:

> "[Plaintiff's Counsel:] And that first case in Milwaukee, I take it then that you followed the personnel rule on suspension pending judicial verdict *and [plaintiff] was reinstated somehow* and given back pay, is that correct?"

[Jackson:]  "*For a period of time yes*."  (Emphases added.)

¶ 90     Plaintiff points to nothing which suggests that Jackson's testimony was not credible and it is not our function to reevaluate this witness' credibility or overturn the ALJ and Commission's credibility finding absent such evidence and where there is no showing they are against the manifest weight of the evidence.  See *Parikh*, 2014 IL App (1st) 123319, ¶ 28.

¶ 91     Plaintiff also argues his due process rights were violated due to the length of the proceedings resulting in his discharge from IDOC.  Again, we note that respondent provides no authority for this contention.  Notwithstanding, we find this argument without merit.  Our supreme court in *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 272 (2004), acknowledged a property and liberty interest in the ability for a plaintiff to continue in his profession requiring constitutional protections.  *Id*.  The court went on to outline the factors to be considered when determining whether a delay in the provision of procedure offends due process which include: "the importance of the private interest and the harm to the interest because of the delay; the government's justification for the delay and its connection to the underlying government interest; and the likelihood that the interim decision may have been mistaken."  *Id*. at 277.

¶ 92     Here both plaintiff and IDOC have significant interests involved.  Plaintiff's interest is in continued employment.  IDOC's interest is in ensuring its parole officers who are armed, deal with convicted criminals, and are charged with protecting the public are honest, display good judgment, and have not themselves engaged in serious criminal behavior.  Here, good reason was provided by IDOC for the delay.  The timeline contained in the record is not completely clear, however, it is clear IDOC did not take disciplinary action because they were waiting for the resolution of the two serious felony charges against plaintiff which occurred nearly back-to-back.

We note that while the charges were pending, pre-disciplinary hearings were held by IDOC for which plaintiff and his union were provided notice resulting in plaintiff twice being placed on administrative leave and suspended pending judicial verdict. While plaintiff argues he was not present for at least one or possibly all of these proceedings, he presents no argument or evidence explaining why this was the case or that it was the result of some error or wrongdoing by IDOC. See *All American Title Agency, LLC*, 2013 IL App (1st) 113400, ¶ 36 (a party claiming a due process violation has the burden of establishing prejudice). Upon the resolution of the final criminal charge, IDOC commenced suspension pending discharge proceedings after which plaintiff was terminated from his employment with IDOC. The basis for IDOC's decision, to see how plaintiff's criminal charges resolved prior to taking disciplinary action, is obvious where the outcome of the criminal cases would have bearing on whether plaintiff should be in a position of authority where he would have possession of a firearm, would be interacting with convicted criminals, and where he must be trusted to protect the public. We cannot fault IDOC for waiting under these circumstances.

¶ 93    As to the likelihood that the interim decision may have been mistaken, we note that the actions taken by IDOC in suspending plaintiff arose from criminal charges having been brought against him. Title 80, section 302.785 of the Code specifically allows for suspension resulting from an arrest that continues pending judicial verdict where the facts raise reasonable doubt concerning the employee's suitability for continued assignment to his position. See 80 Ill. Adm. Code 302.785. We are cognizant that the risk of error becomes problematic when the subject is not accorded a prompt appeal with a preponderance of the evidence standard as was the case here. However, we are comfortable with the risk here where there was a factual basis sufficient to bring and pursue the criminal charges against plaintiff and place him in in custody where these

criminal charges formed the basis of IDOC's charges against plaintiff. Furthermore, we cannot find due process was offended here given the serious nature of the criminal charges being pursued and IDOC's interest in protecting the public by having such an employee remain in the role of parole officer.

¶ 94                                    Double Jeopardy

¶ 95     Citing *Burton v. Civil Service Comm'n*, 76 Ill. 2d 522 (1979), plaintiff argues IDOC's "failure to put [plaintiff] back to work after being found not [guilty] in the [criminal cases] brought against him and, then *** after disciplinary hearings[,] decid[ing] to go after [plaintiff] for the Failure to Report charges amounts to double jeopardy ***."

¶ 96     We find *Burton* has no application here. *Burton* involved a public employee against whom final disciplinary action was taken consisting of a 10-day suspension. *Id.* at 527. Notwithstanding the final disciplinary suspension, the employee was subsequently discharged from employment. *Id.* This second disciplinary action of discharge was based on the same misconduct as the first final disciplinary action and was known at the time of the first disciplinary action of suspension. *Id.* Accordingly, the second disciplinary action of discharge improperly modified the first final disciplinary action. *Id.* We note that our supreme court in *Burton* did not characterize the improper discipline action as double jeopardy, but nonetheless concluded that an administrative department disciplining an employee may not convert a final suspension of limited duration into an interim suspension pending decision on discharge as a means of enhancing punishment for the same misconduct. *Id.*

¶ 97     Regardless, that is not what occurred here. Rather, with each of plaintiff's two criminal charges, he was suspended on an interim basis pending judicial verdict pursuant to section 302.785 of the Code. See 80 Ill. Adm. Code 302.785. Pursuant to 302.785(c)(4) of the Code,

"[s]uch suspension shall have no designated expiration date, depending on the length of the initial judicial process" and "ends with the return of the employee to work, discharge or termination of employment ***." *Id.* Unlike the final disciplinary action in *Burton*, plaintiff's suspension here was clearly an interim action which expressly contemplated a future final disposition of return the employee to work, discharge, or termination of employment. Following the resolution of the last criminal charges, disciplinary proceedings were properly initiated to terminate plaintiff as contemplated by section 302.785 of the Code. Plaintiff was thereafter discharged and this termination was the only final disciplinary action resulting from the four charges against him.

¶ 98    Furthermore, we do not find the prohibition against double jeopardy applicable here. "[D]ouble jeopardy is designed to prevent the State from engaging in more than one attempt to convict an individual, thereby subjecting him to embarrassment, expense, continuing anxiety and insecurity, and increasing the possibility that he may be found guilty even if innocent." *People v. Cabrera*, 402 Ill. App. 3d 440, 446 (2010). This court has already found that administrative proceedings to revoke a physician's license to practice medicine for conduct which also gave rise to a criminal conviction "is not a second criminal proceeding placing the physician in double jeopardy." *Kaplan v. Department of Registration and Education*, 46 Ill. App. 3d 968, 975 (1977); see also *People v. Parmenter*, 283 Ill. App. 3d 688, 689 (1996) (noting that the test for a double jeopardy violation requires a determination, among other things, that the civil action constitutes punishment). Instead, this court concluded that such administrative proceedings are for the purpose of maintaining sound professional standards of conduct to protect the public and the standing of the medical profession in the eyes of the public. *Id.* We similarly find that the administrative proceedings to terminate an IDOC parole officer is not a second criminal

proceeding, but instead, like licensure revocation proceedings, is intended to maintain sound professional standards of conduct to protect the public and the standing of parole officers employed by IDOC in the eyes of the public. See also *Bart v. State Department of Law Enforcement, Division of State Police*, 52 Ill. App. 3d 487, 491 (1977) (holding that double jeopardy does not have application to civil proceedings such as administrative employee disciplinary proceedings).

¶ 99        The ALJ's Proposal Adopted and Affirmed by the Commission

¶ 100   Plaintiff also argues that the ALJ's Proposal, approved and adopted by the Commission's Decision, was against the manifest weight of the evidence. Here plaintiff argues (1) the Decision as to Charges One and Three were in error because the criminal gun charge was dismissed and he was found not guilty of the criminal sexual abuse charge; (2) as to Charge Two, plaintiff could not provide timely written notice due to his incarceration, but subsequently did provide written notice; (3) as to Charge Four, plaintiff could not provide written notice first because he was incarcerated and thereafter, because he did not have access to his computer; (4) as to Charges Two and Four, in the alternative, that the written notice provision was satisfied even if written notice was not provided by plaintiff because IDOC was otherwise aware of plaintiff's arrests; and (5) that his termination was not warranted alleging "[plaintiff's] performance record is just short of impeccable" as found by an ALJ following the administrative review hearing in his 2010 case wherein he ultimately received a 90-day suspension. For the reasons set forth below, we disagree.

¶ 101   "In reviewing a final decision under the Administrative Review Law [citation], this court reviews the administrative agency's decision and not the circuit court's determination[.]"

*Rosario v. Retirement Board of Policemen's Annuity and Benefits Fund of City of Chicago*, 381 Ill. App. 3d 776, 779 (2008).

¶ 102   With respect to the applicable standard of review, this court has stated:

> "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact. [Citation.]  Purely factual findings are reviewed under a 'manifest weight of the evidence' standard, under which the agency's findings are considered '*prima facie* true and correct' unless 'the opposite conclusion is clearly evident.' \*\*\*  On the other hand, if a purely legal question is at issue, then the standard of review is *de novo*; this standard is 'independent and not deferential.'  \*\*\*
>
> Where an agency's decision involves a mixed question of law and fact, we will not reverse the agency's decision unless it is 'clearly erroneous,' which occurs only when the reviewing court is left with the definite and firm conviction that a mistake has been committed.  \*\*\*  Mixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.  \*\*\*  Thus, an examination of the legal effect of a given state of facts involves a mixed question of fact and law subject to the 'clearly erroneous' standard of review.  [Citation.]"  (Internal quotation marks omitted.) *Lipscomb*, 2015 IL App (1st) 142793, ¶¶ 14-15.

¶ 103    Furthermore, in reviewing a final decision under the Administrative Review Law, this court employs a two-step process: (1) the first step is to determine whether the agency's factual findings are against the manifest weight of the evidence and (2) the second step is to determine whether the findings of fact provide sufficient basis for the agency's determination that cause for discharge existed. *McDermott*, 2016 IL App (1st) 151979, ¶ 18.  As to the second step, the Commission has "considerable latitude and considerable discretion in determining what constitutes cause for discharge." *Id*. at ¶ 34.  On review we will not consider whether we would have imposed a more lenient disciplinary sentence. *Id*. at ¶ 35.  Instead, the proper standard of review "is limited to a determination of whether the [Commission] acted unreasonably or arbitrarily by selecting a type of discipline that was inappropriate or unrelated to the needs of the service." (Internal quotations omitted.) *Id*.

¶ 104    We disagree that plaintiff's first argument (that the Decision as to Charges One and Three were in error because the criminal gun charges were dismissed and he was found not guilty of the criminal sexual abuse charges) has any impact on the Decision or its validity.  As previously noted, plaintiff was not found liable as to Charge Three relating to the alleged sexual abuse of his daughter.  The fact that he was found not guilty of that criminal charge has no bearing on the three remaining charges –  (a) whether his conduct with respect to the gun incident violated standards of conduct (Charge One) and (b) whether he submitted written reports of his arrests as required by the regulations (Charges Two and Four).  Further, the ALJ specifically stated in its Proposal "that the alleged sexual assault is being disregarded entirely when considering the appropriate level of discipline due to the lack of evidence and the overly prejudicial nature of the unproven allegations."  With respect to the criminal gun charge, the record confirms that this charge was dismissed because the witnesses to the incident failed to come forward to testify at

the criminal trial. However, even if plaintiff had been acquitted in the criminal proceeding, this fact would not necessarily impact an agency's decision. In discussing such a situation, this court has stated:

> "[t]hat plaintiff was acquitted of the criminal charge does not affect our determination. Not only does an administrative proceeding have a lower standard of proof than does a crimination trial [citation], but, at the administrative hearing, plaintiff was neither charged with [criminal conduct] nor discharged for such action; rather he was discharged for his behavior during the occurrence." *Magett v. Cook County Sheriff's Merit Board*, 282 Ill. App. 3d, 282, 288 (1996).

¶ 105    As in *Magett*, here plaintiff was not discharged for criminal conduct but his behavior during the occurrence. We also cannot say that the ALJ and Commission's findings regarding plaintiff's behavior during the occurrence to conclude that Charge One had been proven were against the manifest weight of the evidence. *McDermott*, 2016 IL App (1st) 151979, ¶ 18. IDOC Rule 120.30 provides that "[e]mployees shall conduct themselves in a manner that will not reflect unfavorably on the Department and shall not engage in conduct that is unbecoming of an employee or that may reflect unfavorably on or impair the operations of the Department." 20 Ill. Adm. Code 120.30 (2006).

¶ 106    In its Proposal the ALJ noted "Since [plaintiff] provided the only testimony as to what occurred, that is what will be judged against this standard." The ALJ specifically stated "there are concerns as to his post-gunshot actions" noting (a) the agency's expectation that a parole officer would not leave the scene of the shooting entirely particularly where the only threat was not from a firearm but a butcher knife; (b) that plaintiff's first call was to his attorney not 911, the police department, or IDOC; and (c) even after speaking with his attorney he still did not call

911 or return to the scene. Though plaintiff claimed he was going to the police to turn himself in, this testimony was found not to be credible and we do not believe the opposite conclusion is clearly evident. See *Parikh*, 2014 IL App (1st) 123319, ¶ 28.

¶ 107    Plaintiff's next three arguments all go to the requirements of IDOC Rule 120.40 entitled "Compliance with Laws and Regulations" which provides:

> "b) Employees shall verbally report as soon as possible and shall
>
> submit a written report within five working days after any:
>
>> 1) Arrest, ***. The report shall specify the facts forming the
>>
>> basis for the arrest, indictment, or conviction and the caption
>>
>> of the case." 20 Ill. Adm. Code 120.40 (2006).

¶ 108    Specifically at issue is whether the written notice requirement is violated where (1) no written notice is provided but IDOC is aware of the arrest from something other than written notice and (2) written notice is not provided at all or not provided within five working days after the arrest because the employee is incarcerated or does not have access to a computer.

> "Because the [Code] has the force and effect of law, the rules of statutory
>
> construction apply to interpreting its provisions. [Citation.] Accordingly, the
>
> primary aim is to give effect to the drafters' intent. [Citation.] The best indicator
>
> of that intent is the language of the provision, which is given its plain and
>
> ordinary meaning. [Citation.] An interpretation of the [Code] is reviewed *de*
>
> *novo*. [Citation.]" *People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 18.

¶ 109    Here the terms of IDOC Rule 120.40 are clear and unambiguous and plaintiff makes no arguments to the contrary. The use of the word "shall" in the absence of exceptions is

"construed as a clear expression of legislative intent to impose a mandatory obligation." *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001). IDOC Rule 120.40 expressly provides that employees "*shall* submit a written report *within five working days* of any \*\*\* [a]rrest[.]" (Emphases added.) 20 Ill. Adm. Code 120.40 (2006). No exception is made to the five-day written notice requirement for potential obstacles such as incarceration or not having access to a computer. Moreover, IDOC Rule 120.40 specifically contemplates that employees under this mandatory obligation will be under arrest and thus subject to incarceration by expressly requiring the report of arrests. See *City of Chicago v. Elm State Property, LLC*, 2016 IL App (1st) 152552, ¶ 18 (we will not read in exceptions, limitation, or other conditions where the language is plain and unambiguous).

¶ 110    Furthermore, we do not find that the five-day written notification provision of IDOC Rule 120.40 can be interpreted as being satisfied (as plaintiff argues without citation to authority) where other notification has been provided to IDOC making them aware of the arrest. This is because within the very same provision, employees are also mandated to verbally report an arrest "as soon as possible." See 20 Ill. Adm. Code 120.40 (2006). Thus, it is entirely foreseeable, and likely often the case, that IDOC will have already been aware of the arrest because of the oral notice requirement and there is nothing in the provision which excuses written notice where oral notice comes first. See *People v. Wilson*, 132 Ill. App. 3d 652, 653-54 (1985) ("where a statute can be reasonably interpreted so as to give effect to all its provisions, a court will not adopt a strained reading which renders one part superfluous"). Accordingly, we do not agree with plaintiff that the "[ALJ] took a hard line on the Notice issue," but instead merely followed the requirements of IDOC Rule 120.40.

¶ 111  Moreover, we do not find the ALJ and Commission's conclusion that IDOC Rule 120.40 was violated as alleged in Charges Two and Four was clearly erroneous or against the manifest weight of the evidence.  See *Lipscomb*, 2015 IL App (1st) 142793, ¶¶ 14-15.  IDOC employees Pronger, Montgomery, and Jackson testified that they were not aware of any written notice to IDOC of plaintiff's arrests.  As to Charge Two, plaintiff admits he "was in custody *** for more than five days and therefore could not file a written report within five days to the IDOC concerning the incident."  We find nothing in the record to the contrary with the exception of what the ALJ called "dubious testimony that [plaintiff] faxed a notice about [the incident] to the [IDOC] but not until sometime in January of 2011."  However, even if credible, the alleged fax would have been well past IDOC Rule 120.40's five working day written notice requirement where plaintiff was arrested for the gun charges in October 2010 and the alleged written notice came sometime in January 2011.

¶ 112  As to Charge Four, plaintiff testified that he did not believe he needed to provide written notice because an employee from IDOC was present at the time of the arrest and he "figured they already knew because they where there at the time of the arrest."  Plaintiff testified that on July 22, 2015 – the seventh working day after his arrest – he obtained and filled out an incident report which he gave to Boulton to deliver to IDOC.  Boulton denied this and plaintiff was found not to be credible on this point.  However, even if plaintiff's testimony was found to be credible, he would still be in violation of IDOC Rule 120.40 because the written notice was beyond the five working day requirement of the written notice provision.

¶ 113                    Disciplinary Action – Discharge

¶ 114  We further find that cause existed for plaintiff's discharge and that the Commission did not act unreasonably or arbitrarily by discharging plaintiff.  See *McDermott*, 2016 IL App (1st)

151979, ¶¶ 18, 35. " 'Cause' has been defined as 'some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his no longer occupying the place.' " *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 89 (1998).

¶ 115   Without any citation to the record or authority to support his position, plaintiff argues he "didn't realize that his termination from employment was also racially motivated and could have been argued at the Administrative Hearing."  He goes on to discuss three officers outside his protected class.  One of the officers was not terminated after leaving her weapon in the bathroom and a second was not terminated despite violating the code of conduct without discussion of the offending actions.  With respect to the third officer mentioned, plaintiff merely points out that the officer was charged with driving under the influence but plaintiff does not identify the discipline imposed.  Based on plaintiff's own argument on appeal, that he could have argued his racial discrimination claims at the administrative hearing but did not realize it, evidences forfeiture of the issue on appeal.  See *Wortham v. City of Chicago Dept. of Administrative Hearings*, 2015 IL App (1st) 131735, ¶ 15 ("if an argument, issue, or defense not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review").  Furthermore, the record is devoid of any evidence supporting plaintiff's allegations of race discrimination.  See *id*.  We also note that plaintiff voluntarily dismissed his discrimination claims pending in the circuit court.  See *Caliendo v. Martin*, 250 Ill. App. 3d 409, 420 (1993) ("Judicial review of administrative decisions is restricted to the record" and "[n]o new evidence shall be heard by the court.").

¶ 116 In finding plaintiff's discharge was not unreasonable or arbitrary, we again note that plaintiff failed to provide a written report for two arrests for serious felony criminal charges as he was required to do. Even more significantly, with respect to the gun related arrest, plaintiff inadvertently shot a minor and immediately left the scene without attempting to help the child. Even if, as argued by plaintiff, he believed the injury was "a flesh wound" or that remaining on the scene would escalate the matter, a parole officer's failure to immediately take action to get a child who has been shot medical attention is in our view is violative of Rule 120.30. As IDOC employees testified, plaintiff's conduct evidences substantial shortcomings that rendered his employment as a parole officer detrimental to the discipline and efficiency of the service. See 80 Ill. Adm. Code 1.170 (2016).

¶ 117 Furthermore, discharge is warranted given plaintiff's prior disciplinary history which includes his "violation of Standards of Conduct" in 2010. As noted in the ALJ's Proposal, for that violation, plaintiff "received the maximum disciplinary suspension short of discharge" and, thus concluded as do we, "that the agency was not out of line in moving up to the next logical disciplinary level – discharge – for violations similar to those proven in this matter." We also note Jackson's testimony that regardless of the length of good service, discharge was warranted because plaintiff's conduct was so egregious where a parole officer is required to carry a gun as part of his job coupled with the fact that plaintiff's weapon discharged and struck an individual after which he fled the scene and failed to do anything to aid the individual. Montgomery also testified that plaintiff's having been charged with a felony, regardless, of a conviction reflected badly on IDOC. He further testified that "[a] Parole Agent that would be supervising and ensuring public safety, which is a larger part of their responsibility, would be unbecoming violating public safety rules." Moreover, he noted "[i]t would be very hard to supervise a

clientele if you're *** facing charges for the same thing that your client is actually facing or have done." Therefore, we find the Commission's decision to discharge plaintiff was not unreasonable or arbitrary.

¶ 118                                    CONCLUSION

¶ 119   For the foregoing reasons, the judgment of the circuit court of Cook County confirming the Commission's July 15, 2015 Decision is affirmed.

¶ 120   Affirmed.